# No. 11-57137

IN THE
# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**OMEGA S.A.,**
*Plaintiff—Appellant,*

*v.*

**COSTCO WHOLESALE CORPORATION,**
*Defendant—Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
TERRY J. HATTER, JR., DISTRICT JUDGE • CASE NO. 2:04-CV-05443-TJH (RCx)

# APPELLANT'S OPENING BRIEF

**HORVITZ & LEVY** LLP
BARRY R. LEVY
JOHN A. TAYLOR, JR.
FELIX SHAFIR
15760 VENTURA BOULEVARD, 18TH FLOOR
ENCINO, CALIFORNIA 91436-3000
(818) 995-0800 • FAX: (818) 995-3157

**COLLEN IP**
JESS M. COLLEN
THOMAS P. GULICK
THE HOLYOKE-MANHATTAN BUILDING
80 SOUTH HIGHLAND AVENUE
TOWN OF OSSINING
WESTCHESTER COUNTY, NEW YORK 10562
(914) 941-5668 • FAX: (914) 941-6091

ATTORNEYS FOR PLAINTIFF AND APPELLANT
**OMEGA S.A.**

# CORPORATE DISCLOSURE STATEMENT

Omega S.A. is a wholly owned subsidiary of a publicly held Swiss corporation, The Swatch Group, Ltd.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iii

JURISDICTIONAL STATEMENT .......................................................... 1

STATEMENT OF ISSUES PRESENTED ................................................ 2

STATEMENT OF THE CASE ................................................................. 4

STATEMENT OF FACTS ........................................................................ 8

SUMMARY OF THE ARGUMENT ...................................................... 12

ARGUMENT ........................................................................................ 16

I.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY
     JUDGMENT IN COSTCO'S FAVOR BASED ON
     PURPORTED COPYRIGHT MISUSE BY OMEGA .................... 16

     A.   The copyright misuse doctrine applies sparingly and only
          to prohibit copyright holders from leveraging the limited
          monopoly conferred by their copyright to control areas
          outside that monopoly .......................................................... 16

     B.   By exercising rights conferred by its copyright in the
          Omega Globe Design, Omega did not leverage its limited
          copyright monopoly to control areas outside of that
          monopoly ................................................................................ 20

          1.   Copyright law grants copyright holders the right to
               control the distribution, including the importation,
               of useful articles that incorporate copyrighted work. . 20

          2.   Omega did no more than control the importation
               and distribution of the Omega Globe Design and
               the Seamaster watches on which the design is
               engraved—a right Omega expressly enjoys under
               copyright law ................................................................ 28

i

II.   THE DISTRICT COURT ERRED IN DENYING PARTIAL
      SUMMARY JUDGMENT IN OMEGA'S FAVOR ON
      COSTCO'S TWO AFFIRMATIVE DEFENSES BASED ON
      COPYRIGHT MISUSE. .................................................................. 35

CONCLUSION ........................................................................................ 36

STATEMENT OF RELATED CASES .................................................... 37

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS (FED. R. APP. P. 32(A)(7)(C))................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ..................................................... *passim*

*Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*,
845 F. Supp. 356 (E.D. Va. 1994) ....................................................... 33

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
166 F.3d 772 (5th Cir. 1999) ....................................................... 14, 20

*Apple Inc. v. Psystar Corp.*,
658 F.3d 1150 (9th Cir. 2011) ..................................................... *passim*

*Arista Records, Inc. v. Flea World, Inc.*,
356 F. Supp. 2d 411 (D.N.J. 2005) ..................................................... 33

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
350 F.3d 640 (7th Cir. 2003) ....................................................... 14, 19

*Bagdadi v. Nazar*,
84 F.3d 1194 (9th Cir. 1996) ........................................................... 22

*Costco Wholesale Corp. v. Omega, S.A.*,
131 S. Ct. 565 (2010) .................................................................... 6

*Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*,
84 F.3d 1143 (9th Cir. 1996) ........................................................... 26

*Kieselstein-Cord v. Accessories by Pearl, Inc.*,
632 F.2d 989 (2d Cir. 1980) ........................................................... 27

*Lasercomb America, Inc. v. Reynolds*,
911 F.2d 970 (4th Cir. 1990) ....................................................... 14, 20

*Latimer v. Roaring Toyz, Inc.*,
601 F.3d 1224 (11th Cir. 2010) ........................................................ 27

*Leicester v. Warner Bros.*,
    232 F.3d 1212 (9th Cir. 2000) ............................................................ 22

*Levine v. Vilsack*,
    587 F.3d 986 (9th Cir. 2009) .............................................................. 16

*Mazer v. Stein*,
    347 U.S. 201 (1954) ............................................................... *passim*

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    454 F. Supp. 2d 966 (C.D. Cal. 2006) ................................................ 33

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998) ........................................ 18, 30, 32, 33

*Morton Salt Co. v. G.S. Suppiger Co.*,
    314 U.S. 488 (1942) ........................................................................ 17

*Omega S.A. v. Costco Wholesale Corp.*,
    541 F.3d 982 (9th Cir. 2008) ................................................... *passim*

*Padfield v. AIG Life Ins. Co.*,
    290 F.3d 1121 (9th Cir. 2002) .......................................................... 35

*Parfums Givenchy, Inc. v. Drug Emporium, Inc.*,
    38 F.3d 477 (9th Cir. 1994) ......................................................... 25, 26

*Practice Mgmt. Info. Corp. v.*
*Am. Med. Ass'n*,
    121 F.3d 516 (9th Cir. 1997) ....................................................... 19, 32

*Quality King Distribs., Inc. v. L'anza Research Int'l*,
    523 U.S. 135 (1998) ........................................................................ 23

*Religious Tech. Ctr. v. Lerma*,
    1996 WL 633131 (E.D. Va. Oct. 4, 1996) ...................................... 31, 32

*Rosenthal v. Stein*,
    205 F.2d 633 (9th Cir. 1953) ....................................................... 27, 34

*Supermarket of Homes, Inc. v. San Fernando Valley*
*Bd. of Realtors,*
   786 F.2d 1400 (9th Cir. 1986) ........................................................ 18, 32

*Swatch S.A. v. New City, Inc.,*
   454 F. Supp. 2d 1245 (S.D. Fla. 2006) ...................................... 26, 27

*Triad Sys. Corp. v. Se. Express Co.,*
   64 F.3d 1330 (9th Cir. 1995) ........................................................ 18, 32

*Vernor v. Autodesk, Inc.,*
   621 F.3d 1102 (9th Cir. 2010) ............................................................ 22

## Statutes

17 U.S.C.

   § 101 ................................................................ 1, 4, 21, 28

   § 102(a)(5) ................................................................ 21

   § 106 ................................................................ 4, 16, 22, 25

   § 106(1) ................................................................ 22, 28

   § 106(3) ................................................................ 4, 6, 16, 22, 28

   § 109 ................................................................ 5, 6

   § 109(a) ................................................................ 5

   § 113 ................................................................ 24

   § 113(a) ................................................................ 22, 25, 28

   § 501 ................................................................ 17

   § 602 ................................................................ 4, 26

   § 602(a) ................................................................ 6

   § 602(a)(1) ................................................................ 4, 16, 17, 22, 28

28 U.S.C.

§ 1291 ..........................................................................................2

§ 1294(1)......................................................................................2

§ 1331 ..........................................................................................1

§ 1337 ..........................................................................................1

§ 1338(a)......................................................................................1

## Rules

Federal Rules of Appellate Procedure 4(a)(1)(A) .....................................2

Federal Rules of Civil Procedure 56(a) .................................................29

## Miscellaneous

H.R. Rep. No. 94-1476 (1976),
*reprinted in* 1976 U.S.C.C.A.N. 5659 ...................................21, 24, 25

David Nimmer, *Codifying Copyright Comprehensibly*,
51 UCLA L. Rev. 1233 (2004) ............................................................25

1 Melville B. Nimmer & David Nimmer,
Nimmer on Copyright § 2.08 [B][3] (2011) ...........................21, 24, 25

William F. Patry, 1 Copyright Law and Practice 274-76
(1994)............................................................................................22

IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

—————————

**OMEGA S.A.,**
*Plaintiff—Appellant,*

*v.*

**COSTCO WHOLESALE CORPORATION,**
*Defendant—Appellee.*

—————————

# APPELLANT'S OPENING BRIEF

—————————

## JURISDICTIONAL STATEMENT

The United States District Court for the Central District of California had original subject matter jurisdiction over this copyright infringement action involving a federal question pursuant to 28 U.S.C. §§ 1331, 1337, and 1338(a), and 17 U.S.C. § 101 et seq. On November 9, 2011, the district court granted defendant Costco Wholesale Corporation's (Costco) motion for summary judgment and denied plaintiff Omega S.A.'s (Omega) cross-motion for partial summary judgment. (1 ER 1-4.) The order fully disposed of all claims in the action. (*Id.*) The district court entered final judgment on November 9, 2011. (*Id.*)

1

Appellant Omega timely filed its notice of appeal on December 9, 2011 pursuant to rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure. (3 ER 345-346.) This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF ISSUES PRESENTED

Omega manufactures watches in Switzerland and distributes those watches around the world, including in the United States, through authorized distributors. Omega designed and obtained a United States copyright for its "Omega Globe Design," which it engraves on the back of its high-end "Seamaster" watches. The limited monopoly provided by its copyright permits Omega to control and limit the distribution (including importation and sale in the United States) of the Omega Globe Design and the Seamaster watches on which the design is engraved.

Omega did not authorize the sale of goods bearing its copyrighted Omega Globe Design to Costco, and Costco was not authorized by Omega to sell goods bearing that design. Costco, however, obtained Seamaster watches with the Omega Globe Design through a third party and then sold them in its stores within the United States.

2

Omega sued Costco for copyright infringement. The rule in this and other circuits is that a defendant in a copyright infringement action may assert an affirmative defense of copyright misuse where the holder of the copyright leverages the limited monopoly afforded by its copyright to control areas "outside" that limited monopoly. If the copyright holder is merely using its copyright to control areas "within" its limited monopoly— for example, in Omega's case, to control distribution of its copyrighted work—the defense does not apply. Nonetheless, Costco moved for and the district court granted summary judgment on the grounds that Omega's copyright infringement action was barred by application of the copyright misuse doctrine. (1 ER 1-4.)

This appeal from the order granting summary judgment in favor of Costco (and denying Omega's motion for partial summary judgment on the same grounds) therefore presents the following issue:

May a district court grant summary judgment based on a finding of copyright misuse where the moving party has shown only that the copyright holder exercised the right to control distribution that is statutorily conferred by the limited copyright monopoly?

## STATEMENT OF THE CASE

Omega manufactures its high-end Seamaster watches in Switzerland. (1 ER 8-9; *see also Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 983 (9th Cir. 2008).) The back of each Seamaster watch bears an engraving of Omega's copyrighted Omega Globe Design. (1 ER 8-9; 2 ER 111 (¶¶ 19-21), 114 (¶ 4), 125 (¶ 5), 136 (¶ 9); 3 ER 339 (Fact 36); *see also Omega S.A.,* 541 F.3d at 983.) As a result, Omega has a monopoly under the Copyright Act, 17 U.S.C. § 101 et seq., that enables it to control the distribution (including importation) of the Omega Globe Design and the Seamaster watches on which the design is engraved. *See* 17 U.S.C. § 106(3) (2006); 17 U.S.C. § 602(a)(1) (Supp. IV 2011).

In the Spring of 2004, Costco purchased Seamaster watches incorporating the Omega Globe Design from ENE Limited. (1 ER 8-9; *see also Omega S.A.*, 541 F.3d at 984.) Then, without Omega's authorization, Costco sold the watches at its stores within the United States. (1 ER 8-9; 2 ER 111 (¶ 21), 135-136 (¶¶ 5-12); *see also Omega S.A.*, 541 F.3d at 984.) Consequently, in July 2004, Omega filed this copyright infringement action against Costco for violating sections 106 and 602 of the Copyright Act. (2 ER 30-40; *see also Omega S.A.*, 541 F.3d at 984.)

In its answer, Costco asserted affirmative defenses, including the defense that its conduct was authorized pursuant to the first sale doctrine as codified in section 109 of the Copyright Act.  (2 ER 41-47; *see also Omega S.A.,* 541 F.3d at 984.)  The first sale doctrine permits those who own copies of a copyrighted work to sell or otherwise dispose of those copies without the authorization of the copyright owner, under limited circumstances.  *See* 17 U.S.C. § 109(a) (2006).

In 2005, Costco sought leave to amend its answer to add the affirmative defense of copyright misuse. (2 ER 48-61.) Omega opposed the addition of the copyright misuse affirmative defense on the ground that the defense does not apply where, as here, Omega had not attempted in any way to extend its rights beyond the scope of the limited monopoly conferred by Congress in the Copyright Act.  (2 ER 62-67.)  The district court denied Costco leave to amend its answer to include copyright misuse as a defense.  (1 ER 5.)

Nonetheless, when Costco subsequently served an answer to Omega's first amended complaint, Costco added the copyright misuse defense.  (2 ER 77-87.)  Omega moved to strike the addition of the misuse defense, (2 ER 88-106), but the district court never ruled on the motion to strike

because it instead granted summary judgment in favor of Costco on the ground that the first sale doctrine provided a complete defense to Omega's copyright infringement action. (1 ER 26-27.)

Omega appealed and, in 2008, this Court reversed in favor of Omega. (*Omega S.A.*, 541 F.3d at 983.) Following well-settled circuit precedent, this Court explained that section 109 of the Copyright Act "provide[s] no defense to an infringement action under §§ 106(3) and 602(a) that involves (1) foreign-made, nonpiratical copies of a U.S.-copyrighted work, (2) unless those same copies have already been sold in the United States with the copyright owner's authority." (*Id.*) This Court held that "[b]ecause there is no genuine dispute that Omega made the copies of the disputed design in Switzerland, and that Costco sold them in the United States without Omega's authority, the first sale doctrine is unavailable as a defense to Omega's claims." (*Id.*)

The United States Supreme Court granted certiorari and in 2010, after briefing and oral argument, an equally divided Supreme Court affirmed this Court's decision that Omega's infringement action was not barred by the first sale doctrine. (*See Costco Wholesale Corp. v. Omega, S.A.*, 131 S. Ct. 565 (2010).)

Upon remand of the case to the district court, Omega and Costco cross-moved for summary judgment on Costco's copyright misuse defense. (2 ER 141-199.)  In particular, Costco sought summary judgment on Omega's copyright infringement action based on alleged copyright misuse. (2 ER 141-166.)  Omega, in turn, sought partial summary judgment on Costco's tenth and eleventh affirmative defenses, which are predicated on copyright misuse.  (2 ER 167-198.)

On November 9, 2011, the district court ruled that Omega's use of its copyrighted Omega Globe Design on its Seamaster watches constituted copyright misuse, and thus granted Costco's motion for summary judgment and denied Omega's cross-motion for partial summary judgment. (1 ER 1-4.)  The district court's order acknowledged this Court's applicable rule that "'the misuse defense prevents copyright holders from leveraging their limited monopoly to allow them to control areas outside of their monopoly.'  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)."  (1 ER 3.)  Nonetheless, the district court granted summary judgment, (1 ER 1-4), despite the absence of any showing that Omega had leveraged its limited copyright monopoly to control areas "outside" of that monopoly.

7

The district court's summary judgment decision is contrary to the law of this circuit (and other circuits that have addressed the issue), as well as United States Supreme Court precedent, and should be reversed. The case should be remanded to the district court with directions to enter partial summary judgment in Omega's favor on Costco's copyright misuse affirmative defenses and for further proceedings on Omega's infringement claim.

## STATEMENT OF FACTS

Omega is a Swiss manufacturer of luxury watches. (1 ER 8-9; 3 ER 310 (Fact 1); *see also Omega S.A.*, 541 F.3d at 983.) Omega distributes its watches around the world, including in the United States, through authorized distributors and retailers. (1 ER 8-9; 2 ER 111 (¶ 21), 135 (¶ 5); 3 ER 310-311 (Fact 2); *see also Omega S.A.*, 541 F.3d at 983.)

For at least the past sixty years, Omega has engraved unique, artistic designs, such as its "Seahorse"



and "Observatory"



on the backs of Omega watches as a method by which to communicate value and luxury to its customers. (2 ER 201 (¶¶ 3-4), 205-208, 212-215; 3 ER 311 (Facts 3 and 4).)

On March 12, 2003, Omega obtained a United States copyright registration (number VAu 574-660) for its unique, original artistic Omega Globe Design:



(2 ER 32-33, 38-40, 201-202 (¶ 7), 225-226; 3 ER 312 (Fact 6).) Costco does not contest the validity of Omega's copyright in the Omega Globe Design. (2 ER 308.)

The Omega Globe Design was designed to evoke Omega's worldwide presence and prestige. (2 ER 201 (¶¶ 3-4), 205-208, 212-215.) In addition to symbolizing artistic value and luxury to customers, the Omega Globe Design is intended to protect against counterfeiting because the laser engraving method Omega uses to add the design to the watch back requires high manufacturing quality. (2 ER 201 (¶ 3), 209; 3 ER 319 (Fact 10).)

Omega began selling watches with engraved reproductions of the copyrighted Omega Globe Design in September 2003. (2 ER 111 (¶ 21), 136 (¶ 9); 3 ER 338 (Fact 32).) Because engraving the Omega Globe Design involves a heavy industrial cost and technical investment for each watch, Omega did not initially engrave the Omega Globe Design on all watches. (2 ER 201 (¶ 3), 209, 282 (¶ 3), 285-286.) Rather, the new design was phased in over time.

Omega's distribution policy dictates that its watches be sold only through authorized retailers and distributors, (2 ER 111 (¶ 21), 135 (¶ 5); 3 ER 310-311 (Fact 2)), which maintains the exclusivity and finely cultivated image of Omega brand watches, and protects the environment in which Omega's copyrighted works are displayed and distributed. (2 ER 111 (¶

21), 136 (¶ 8), 139-140 (Fact 12).)  Furthermore, Omega's contracts with its distributors and retailers limit the territories in which they can distribute and sell the watches.  (2 ER 111 (¶ 21), 135 (¶¶ 5-8), 136 (¶ 12), 202 (¶¶ 9-10), 228-277.)

Defendant Costco is a publicly traded company that operates retail warehouse-club stores.  (2 ER 138 (Fact 7).)  Costco is not an authorized retailer of Omega brand watches nor is it authorized to import, copy, sell or otherwise distribute the Omega Globe Design as engraved on Seamaster watches.  (1 ER 8-9; 2 ER 111 (¶ 21), 135-136 (¶¶ 6-11); *see also Omega S.A.*, 541 F.3d at 983-84.)

In 2003, the parties discussed Costco's interest in selling Omega brand watches in its warehouse stores.  (3 ER 323 (Fact 14).)  Costco stated that if Omega did not agree to make specific watch models available to Costco through authorized channels, on terms acceptable to Costco, it would obtain the watches, for resale purposes, from what Costco described as the "secondary market."  (2 ER 201 (¶ 6), 218-223.)  When Omega did not agree to Costco's terms, Costco arranged to acquire Omega brand watches bearing the Omega Globe Design from an unauthorized source.  (2 ER 201 (¶ 6), 219-223.)

11

The watches bearing the Omega Globe Design were manufactured abroad and sold to authorized distributors overseas. (1 ER 8-9; 2 ER 111 (¶¶ 19-21), 114 (¶¶ 3-4), 125 (¶¶ 4-5), 136 (¶ 12); *see also Omega S.A.*, 541 F.3d at 984.) Unidentified third parties purchased the watches and then sold them to ENE Limited, which in turn sold them to Costco. (*See* 1 ER 8-9; 2 ER 111 (¶ 21), 136 (¶ 12); *see also Omega S.A.*, 541 F.3d at 984.) Costco then sold the watches in its retail stores. (1 ER 8-9; 2 ER 111 (¶¶ 19-21), 114 (¶¶ 3-4), 125 (¶¶ 4-5), 136 (¶ 12); 3 ER 325-326 (Fact 17); *see also Omega S.A.*, 541 F.3d at 984.) Upon learning of this scheme, Omega purchased two Seamaster watches engraved with the copyrighted Omega Globe Design from Costco stores. (2 ER 111 (¶¶ 19-20), 113-132.) Omega's internal investigation determined that the watches had been sold overseas under distribution agreements that restricted sale of the watches to specific geographic territories outside the United States. (*See* 2 ER 111 (¶ 21), 136 (¶ 12), 202 (¶¶ 9-10), 228-277.)

Omega sued Costco for copyright infringement. (1 ER 30-40.)

## SUMMARY OF THE ARGUMENT

In granting summary judgment in favor of Costco, the district court paid lip service to the controlling circuit rule that the copyright misuse

defense applies only when a copyright holder has leveraged the limited monopoly afforded by its copyright to control areas *outside* that monopoly. But the district court ignored this rule when it concluded that "Omega misused its copyright of the Omega Globe Design by leveraging its limited monopoly in being able to control the importation of that design to control the importation of its Seamaster watches." (1 ER 3.) The district court's conclusion is based on the fallacy that it was copyright misuse for Omega to assert its valid copyright in the Omega Globe Design to control areas *within* the limited monopoly specifically conferred by its copyright—i.e., to control the distribution (including the importation) of its copyrighted Omega Globe Design as engraved on the Seamaster watches.

This circuit recently reaffirmed that to establish the misuse defense, the copyright holder must be attempting to use the limited monopoly conferred by its copyright to "'control . . . areas outside th[at] monopoly.'" *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011), *cert. denied*, 80 U.S.L.W. 3401 (2012). *Apple* is consistent with past circuit precedent. *See, e.g., A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026-27 (9th Cir. 2001).

13

Outside the Ninth Circuit, the defense of copyright misuse has likewise been restricted to circumstances where the copyright holder sought to leverage a copyright to exercise control in an interest outside the limited copyright monopoly—such as preventing others from developing or using their own products, seeking to prevent others from gaining access to public domain materials over which the copyright holder had no copyright, or otherwise trying to use a contract to secure rights that its copyright has not afforded it. *See, e.g., Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 642-43, 646-47 (7th Cir. 2003); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 793-94 (5th Cir. 1999); *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 978-79 (4th Cir. 1990).

No such leveraging has occurred here. Indeed, Costco remains free to develop and sell its own watches (including watches bearing Costco's own designs), to sell any number of watches that do not bear the copyrighted Omega Globe Design, and even to sell watches bearing the copyrighted Omega Globe Design after there has been a "first sale" in the United States.

The district court appears to have reasoned that because watches in and of themselves cannot be copyrighted, controlling importation of

14

Seamaster watches on which the copyrighted Omega Globe Design is engraved must be copyright misuse. The district court's reasoning is simply wrong. Where a copyrighted artistic element has been incorporated into a non-copyrightable manufactured industrial product (here, a watch), the copyright holder is granted a limited monopoly to control the distribution (and thus the importation) of the design as incorporated into the product. *See Mazer v. Stein*, 347 U.S. 201, 202, 213-19 (1954). Thus, by controlling the distribution and importation of the copyrighted Omega Globe Design as it was incorporated into Omega watches, Omega did no more than properly exercise an exclusive right granted by its copyright interest. *See A&M Records, Inc.*, 239 F.3d at 1026-27; *see also Mazer*, 347 U.S. at 218-19. Because Omega did not leverage its copyright in the design to exert control in any areas outside the limited monopoly afforded by its copyright, the district court should have found that Costco's copyright misuse defense is meritless.

15

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN COSTCO'S FAVOR BASED ON PURPORTED COPYRIGHT MISUSE BY OMEGA.[1]

## A. The copyright misuse doctrine applies sparingly and only to prohibit copyright holders from leveraging the limited monopoly conferred by their copyright to control areas outside that monopoly.

Section 106(3) of the Copyright Act of 1976 gives the owner of a copyright the exclusive right to distribute copies of a copyrighted work. 17 U.S.C. § 106(3).[2] Under section 602(a)(1) of the Act, a person infringes this exclusive distribution right by importing into the United States, without the authorization of the copyright owner, copies of a copyrighted work that have been acquired outside of the United States. 17 U.S.C. § 602(a)(1).[3]

---

[1] A district court's order granting summary judgment is reviewed on appeal under the de novo standard of review. *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009).

[2] "Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . ." 17 U.S.C. § 106 (2006).

[3] "Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have

(continued...)

Such a person may be sued for copyright infringement.  17 U.S.C. § 501 (2006 & Supp. IV 2011).

Copyright misuse is a judicially created defense to copyright infringement. *Apple Inc.*, 658 F.3d at 1157.[4] The misuse defense prevents a copyright holder from leveraging the limited monopoly afforded by its copyright to control areas outside that limited monopoly.  *Id.*

In *Apple Inc.*, the Ninth Circuit emphasized that the copyright misuse doctrine is applied "sparingly," pointing out that the only case in which this Court has upheld the application of the misuse defense is one in which the copyright holder improperly sought to leverage its copyright in a coding system "to prevent the use of all competitor's products," a use clearly outside the holder's limited copyright monopoly.  *Id.* at 1157-58.

---

(...continued)

been acquired outside the United States, is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501."  17 U.S.C. § 602(a)(1).

[4] "Copyright misuse is a judicially crafted affirmative defense to copyright infringement, derived from the long-standing existence of such a defense in patent litigation.  The patent misuse defense was originally recognized by the Supreme Court in 1942, in holding that the owner of a patent on a salt tablet machine could not require licensees to use only unpatented salt tablets sold by the patent owner. *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942)." *Apple Inc.*, 658 U.S. 3d at 1157.

*Apple* is consistent with past Ninth Circuit precedent, which has consistently found no misuse where a copyright holder did not leverage the limited monopoly conferred by the copyright to control an area outside that monopoly. *See, e.g., A&M Records, Inc.*, 239 F.3d at 1026-27 (no copyright misuse where plaintiffs, who were engaged in the commercial recording, distribution, and sale of copyrighted musical compositions and sound recordings, sought to use their copyright to control online distribution of those compositions and recordings); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109, 1114 & n.8 (9th Cir. 1998) ("nothing indicate[d]" that copyright holder "abused its copyright" where it sought to enforce its right to control distribution of work covered by its copyrighted software program); *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1333-34, 1337 (9th Cir. 1995), *superseded in part by statute on another ground as stated in Apple Inc.*, 658 F.3d at 1158-59 (defendant could not show copyright misuse because plaintiff, who manufactured computers and licensed unique copyrighted software to run and repair plaintiff's software and computers, "did not attempt to prohibit" defendant or others from developing competing service software); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986) (real estate businesses'

18

trade association did not misuse its copyright in multiple listing books where it allegedly prevented unauthorized distribution of their copyrighted work to the public).[5]

In jurisdictions other than the Ninth Circuit, the defense has also been restricted to circumstances where the copyright holder sought to leverage his copyright to control an area outside its limited monopoly, such as preventing others from developing or using their own products, seeking to prevent others from gaining access to public domain materials over which the copyright holder has no copyright, or otherwise trying to use a contract to secure rights that its copyright did not afford it. *See, e.g., Assessment Techs. of WI, LLC*, 350 F.3d at 642-43, 646-47 (indicating that if a copyright holder were to contractually restrict its customers from revealing to others uncopyrighted public domain data the customers entered into a copyrighted compilation program, that "might constitute

---

[5] *Apple Inc.* emphasizes that the only case in which this circuit has upheld the application of a copyright misuse defense was in *Practice Management Information Corp. v. American Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997), *amended by* 133 F.3d 1140 (9th Cir. 1998). This court did so there "because the copyright licensor in that case prevented the licensee from using any other competing product. 121 F.3d at 520-21." *Apple Inc.*, 658 F.3d at 1157. This conduct, *Apple* explained, was held to be copyright misuse "because the AMA was not entitled to use the license agreement to prevent the use of all competitors' products." *Id.* at 1158.

copyright misuse"); *Alcatel USA, Inc.*, 166 F.3d at 793-94 (copyright misuse could be found where copyright holder's licensing agreement for its copyrighted software prevented defendant from developing competing products); *Lasercomb America, Inc.*, 911 F.2d at 971-72, 978-79 (holding plaintiff committed copyright misuse because its licensing agreements for its copyrighted software program barred licensees from developing or assisting with the development of any competing software).[6]

**B.    By exercising rights conferred by its copyright in the Omega Globe Design, Omega did not leverage its limited copyright monopoly to control areas outside of that monopoly.**

      **1.    Copyright law grants copyright holders the right to control the distribution, including the importation, of useful articles that incorporate copyrighted work.**

Omega has a copyright in the unique, original, artistic Omega Globe Design engraved on the back of its Seamaster watches.  (1 ER 8-9; 2 ER 38-40, 201-202 (¶ 7), 225-226; 3 ER 312 (Fact 6).)  Costco does not contend that Omega's copyright in its Omega Globe Design is invalid.  (2 ER 308.)

---

[6]    *See Apple Inc.*, 658 F.3d at 1157, 1159-60 (Ninth Circuit's discussion of *Alcatel USA, Inc.* and *Lasercomb America, Inc.*).

Rather, Costco asserts that Omega has misused a valid copyright. (*See* 2 ER 141-166.)

It is not surprising that Costco does not challenge the validity of Omega's copyright in the Omega Globe Design. Copyright protection extends to "pictoral, graphic, and sculptural works," 17 U.S.C. § 102(a)(5) (2005), which "include[s] two-dimensional and three-dimensional works of fine, graphic, and *applied art . . . .*" 17 U.S.C. § 101 (Supp. IV 2011) (emphasis added). Congress understood applied art to include those works like the Omega Globe Design that have been embodied in useful articles. 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.08[B][3] (2011); *accord* H.R. Rep. No. 94-1476, at 54 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5667 (Copyright Act's definition of "'pictorial, graphic, and sculptural works'" extends to "works of 'applied art,'" which "encompass all original pictorial, graphic, and sculptural works that are intended to be or have been embodied in useful articles, regardless of factors such as mass production, commercial exploitation, and the potential availability of design patent protection"). Indeed, pictorial, graphic, or sculptural works such as the Omega Globe Design "that are embodied or incorporated within a useful article (i.e., a carving on the back

21

of a chair or an engraving in a glass vase)" have "traditionally [been] accorded copyright protection." *Leicester v. Warner Bros.*, 232 F.3d 1212, 1219 n.3 (9th Cir. 2000) (citing William F. Patry, 1 Copyright Law and Practice 274-76 (1994)).

Omega's ownership of a copyright in the Omega Globe Design gives Omega a number of exclusive rights. *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1106 (9th Cir. 2010) ("The Copyright Act confers several exclusive rights on copyright owners."). For example, under section 106 of the Copyright Act of 1976, "[t]he owner of a copyright has the exclusive right" to "reproduce the copyrighted work" and "to distribute copies of the work to the public by sale." *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 n.3 (9th Cir. 1996); *see also* 17 U.S.C. §§ 106(1), (3). In addition, subject to certain exceptions inapplicable to this case, "the exclusive right to reproduce a copyrighted pictorial, graphic, or sculptured work in copies under section 106 includes the right to reproduce the work in or on any kind of article, whether useful or otherwise." 17 U.S.C. § 113(a) (2006). And the exclusive right to control distribution gives the copyright owner the exclusive right to prohibit the unauthorized importation of copies of a copyrighted work into the United States. *See* 17 U.S.C. § 602(a)(1).

Consequently, because Costco does not contend that Omega's copyright in the Omega Globe Design is invalid, Omega's right to control the reproduction and distribution—including importation—of the Omega Globe Design is undisputed.

Where, as here, the copyright is for an artistic element that has been engraved on a useful product, the right to control distribution that is conferred by the copyright also includes the right to prevent *others* from distributing the copyrighted work that is engraved on that useful product. Thus, in *Mazer v. Stein*, the Supreme Court recognized that it cannot be a "misuse of the copyright" to copyright an artistic work, incorporate that work (for example, by engraving) as an element of a manufactured "industrial article," and then exercise the exclusive right granted by copyright to prevent others from distributing the article incorporating the copyrighted work. 347 U.S. at 218-19. Specifically, the Supreme Court held that statuettes of dancing figures incorporated into lamp bases were copyrightable and that this copyright allowed plaintiffs to "prevent use of copies of their statuettes as such *or as incorporated in some other article*." *Id.* (emphasis added); *see also Quality King Distribs., Inc. v. L'anza Research Int'l*, 523 U.S. 135, 138, 140 (1998) (regarding hair care products

with copyrighted labels affixed to them, the Supreme Court stated: "Although the labels themselves have only a limited creative component, our interpretation of the relevant statutory provisions would apply equally to a case involving more familiar copyrighted materials such as sound recordings or books.").

Although enacted after *Mazer*, "[t]he present Copyright Act expressly adopts the holding in *Mazer v. Stein*." 1 Nimmer & Nimmer, *supra*, § 2.08[B][3]; *accord* H.R. Rep. No. 94-1476, at 105, *reprinted in* 1976 U.S.C.C.A.N. 5720 ("Section 113 [of the Copyright Act] deals [w]ith the extent of copyright protection in 'works of applied art.' The section takes as its starting point the Supreme Court's decision in *Mazer v. Stein*, 347 U.S. 201 (1954), and the first sentence of subsection (a) restates the basic principle established by that decision."). Because the "rule of *Mazer*" was "affirmed by the bill" enacted into law as the Copyright Act of 1976, a copyrighted pictorial, graphic, or sculptural work "will afford protection to the copyright owner against unauthorized reproduction of his work in useful as well as nonuseful articles." H.R. Rep. No. 94-1476, at 105, *reprinted in* 1976 U.S.C.C.A.N. 5720; *accord*, 1 Nimmer & Nimmer, *supra*, § 2.08[B][3].

24

Indeed, it is a standard business practice to affix or incorporate copyrighted designs into utilitarian objects. In the Copyright Office, useful items such as jewelry boxes, scarves, dolls, clocks, sun dials, and salt and pepper shakers are routinely protected by copyright. 1 Nimmer & Nimmer, *supra*, §2.08[B][3]. If the Copyright Act did not grant the copyright owner the exclusive right to control the use of a copyrighted design that has been incorporated into an article, it would be meaningless for the Act to provide that "the exclusive right to reproduce a copyrighted pictorial, graphic, or sculptural work in copies under section 106 [of the Act] includes the right to reproduce the work in or on any kind of article, whether useful or otherwise." 17 U.S.C. § 113(a).[7]

Thus, for example, in *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477 (9th Cir. 1994), this Court affirmed a judgment for a

---

[7] Notably, in the wake of *Mazer*'s holding that copyright holders can prevent the use of copies of the copyrighted work as they are incorporated into useful articles, Congress has never acted to bar a copyright holder's authority to prohibit the distribution and importation of copyrighted applied art as it is incorporated into useful objects, despite amending the Copyright Act forty-eight times from 1978 through 2004. *See* David Nimmer, *Codifying Copyright Comprehensibly*, 51 UCLA L. Rev. 1233, 1299-1315 (2004) (listing and evaluating these various amendments). To the contrary, Congress incorporated the "rule of *Mazer*" into the Copyright Act. H.R. Rep. No. 94-1476, at 105, *reprinted in* 1976 U.S.C.C.A.N. 5720.

plaintiff on its copyright infringement claim under 17 U.S.C. § 602 where the defendant violated the copyright holder's exclusive right to control the distribution and importation of perfume boxes bearing a copyrighted design. *Id.* at 479-85. The plaintiff in *Parfums Givenchy* was able to enforce its right to control the importation of perfume boxes—a useful article—by virtue of its copyright in the design incorporated into the boxes. *Id.*; s*ee also Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1146, 1148-49 (9th Cir. 1996) (acknowledging that, absent a first sale, defendant's unauthorized sale of diapers in boxes incorporating a copyrighted design would violate the exclusive right of distribution conferred by the copyright). Similarly, Omega may control the distribution, including the importation, of the watches on which the copyright-protected Omega Globe Design is reproduced. *See Omega S.A.*, 548 F.3d at 983-84, 990.

Courts in other circuits have likewise enforced the exclusive rights granted to copyright holders in cases involving copyrighted works affixed to useful articles. For example, in *Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245 (S.D. Fla. 2006), the court granted summary judgment in favor of the copyright holder on its copyright infringement claim where the

26

defendant violated copyright law by importing watches bearing a copyrighted design. *Id.* at 1253-55. Similarly, in *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224 (11th Cir. 2010), the Eleventh Circuit recognized that copyright law protects painted designs on motorcycles. *Id.* at 1234 (holding that "[t]he fact that [the artist's] artwork appears on useful articles does not diminish his copyright protection"). And, in *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989 (2d Cir. 1980), the Second Circuit reversed summary judgment for a defendant on a copyright infringement claim, finding that belt buckles with sculpted designs were properly the subject of copyright protection. *Id.* at 990-94.

These cases make clear that incorporation of a copyrighted design onto a useful article does not render copyright law inapplicable to the copyrighted work or eliminate any of the copyright holder's exclusive rights to control the copyrighted work. *See Rosenthal v. Stein*, 205 F.2d 633, 636-37 (9th Cir. 1953) ("'A subsequent utilization of a work of art in an article of manufacture in no way affects the right of the copyright owner to be protected against infringement of the work of art itself.'" . . . [Copyright] [p]rotection is not dissipated by taking an unadulterated object of art as copyrighted and integrating it into commercially valuable

merchandise.'"). Rather, copyright law confers on the copyright holder the right to "prevent use of" copies of the copyrighted work "as incorporated in" the useful article. *Mazer*, 347 U.S. at 218-19.

To sum up, copyright law expressly grants copyright owners the exclusive rights to reproduce works of applied art onto useful articles, 17 U.S.C. §§ 101, 106(1), 113(a), and to then control the distribution (including the importation) of copies of the copyrighted works, 17 U.S.C. §§ 106(3), 602(a)(1). If copyright holders could not prevent others from distributing the useful articles on which a copyrighted work of applied art is reproduced, then the limited monopoly conferred by the copyright would be illusory.

> **2.  Omega did no more than control the importation and distribution of the Omega Globe Design and the Seamaster watches on which the design is engraved—a right Omega expressly enjoys under copyright law.**

In Omega's prior successful appeal in this matter, this Court held that Omega's right to control the distribution and sale of its Omega Seamaster watches bearing the engraved Omega Globe Design was protected by Omega's copyright; the Court found that there was no first sale under the Copyright Act where Costco, without Omega's

authorization, had obtained watches engraved with Omega's copyrighted design that were manufactured and sold abroad. *Omega S.A.*, 541 F.3d at 983-84, 990. As a result, this Court permitted Omega to go forward with its copyright infringement action against Costco, tacitly acknowledging that Omega's control over the distribution and importation of Seamaster watches with the engraved Omega Globe Design was a right Omega expressly enjoys under copyright law.

Following remand, it was Costco's burden, as the party seeking summary judgment, to show that there was no genuine issue as to any material fact and that it was "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet that burden on its copyright misuse defense, Costco had to show conclusively that Omega was leveraging the limited monopoly granted by its copyright to control areas *outside* that monopoly. (*Supra*, pp. 17-20.) Costco made no such showing.

The record shows that Omega did no more than use its copyright in the Omega Globe Design to control areas within the limited monopoly statutorily conferred by that copyright, i.e., over the distribution, including the importation, and sale within the United States of the Omega Globe Design as engraved on Omega Seamaster watches. As a matter of law,

that is a valid exercise of Omega's copyright which cannot establish a defense of copyright misuse. *See, e.g.*, *A&M Records, Inc.*, 239 F.3d at 1026-27 (holding that there was no evidence of copyright misuse where plaintiffs simply "seek to control reproduction and distribution of their copyrighted works, exclusive rights of copyright holders"); *Micro Star*, 154 F.3d at 1109, 1114 & n.8 (finding no indication of copyright misuse where copyright holder sought to enforce its right to control distribution of work covered by its copyrighted software program); *see also Mazer,* 347 U.S. at 218-19 (indicating no "misuse of the copyright" occurs where a copyrighted design is registered and then incorporated into a useful industrial article).[8]

The district court granted summary judgment based on its conclusion that Omega had misused its copyright of the Omega Globe Design "by leveraging its limited monopoly in being able to control the importation of that design to control the importation of its Seamaster watches." (1 ER 3.) The district court was mistaken; it misapplied the misuse doctrine by

---

[8] Costco has not claimed that Omega has ever attempted to use its copyright in the Omega Globe Design to prevent Costco: from selling watches that do not bear the copyrighted Omega Globe Design; from developing and selling its own line of watches, including watches engraved with Costco's own artistic designs; or even from selling watches bearing the copyrighted Omega Globe Design after there has been a "first sale" in the United States.

ignoring the law governing a copyright holder's exclusive rights in copies of copyrighted work incorporated into useful articles. As demonstrated above, copyright law grants copyright holders the right to control the distribution, including the importation, of useful articles (i.e., watches) that incorporate copyrighted work (i.e., the Omega Globe Design), and a defendant does not commit copyright misuse by exercising the very right granted by its copyright. (*Supra*, pp. 22-30.)

To the extent that the subtext of the district court's ruling was an implied disapproval of Omega's subjective motives,[9] a finding of copyright misuse cannot be based on a court's condemnation of subjective intent because a copyright right holder's motives are irrelevant to the issue of copyright misuse. Copyright "misuse is quite distinct from the legitimate invocation of one's copyright even though prompted by ulterior motives." *Religious Tech. Ctr. v. Lerma*, 1996 WL 633131, at *12 (E.D. Va. Oct. 4,

---

[9] (*See* 1 ER 3) (district court stated "Omega concedes that a purpose of the copyrighted Omega Globe Design was to control the importation and sale of its watches containing the design, as the watches could not be copyrighted," and then granted summary judgment based on copyright misuse).

1996).[10]  Whether copyright misuse has occurred instead turns on the copyright holder's objective actions—i.e., whether copyright holders acted to "'leverag[e] their limited monopoly to allow them control of areas outside the monopoly.'"  *Apple Inc.*, 658 F.3d at 1157.  "To misuse a copyright, therefore, the copyright owner must *use* the copyright in an impermissible way . . . ."  *Religious Tech. Ctr*, 1996 WL 633131, at *12 (emphasis added).

Indeed, on every occasion this Court has been called upon to assess whether a party committed copyright misuse, the Court focused on the copyright holder's objective use of the copyright—rather than examining the copyright holder's subjective intent.  *See A&M Records, Inc.*, 239 F.3d at 1026-27 (looking at use of the copyright by the copyright holder to assess whether copyright misuse occurred); *Micro Star*, 154 F.3d at 1114 n.8 (same); *Practice Mgmt. Info. Corp.*, 121 F.3d at 520-21 (same); *Triad Sys. Corp.*, 64 F.3d at 1337 (same); *Supermarket of Homes, Inc.*, 786 F.2d at 1408 (same).  Correspondingly, on none of those occasions did this Court suggest the subjective motivations underlying the copyright holder's

---

[10] This Court has cited with approval *Religious Technology Center*'s discussion of copyright misuse.  *A&M Records, Inc.*, 239 F.3d at 1026-27.

conduct could amount to misuse if the copyright holder's objective conduct did not itself constitute misuse.

This is precisely why the key question triggered by a copyright misuse defense is whether the "*conduct* by the copyright holder suffices to trigger the misuse defense." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 995 (C.D. Cal. 2006) (emphasis added). Thus, when copyright holders have done no more than *use* their copyrights to control distribution of their copyrighted works—an "exclusive right[] of copyright holders"—they do not commit copyright misuse. *A&M Records, Inc.*, 239 F.3d at p. 1027; *accord*, *e.g.*, *Micro Star*, 154 F.3d at 1109, 1114 & n.8 (finding no indication of copyright misuse where copyright holder enforced its right to control distribution of work covered by its copyright); *Metro-Goldwyn-Mayer Studios, Inc.*, 454 F. Supp. 2d at 998 ("A plaintiff's 'enforcement of its copyrights does not constitute copyright misuse.'"); *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005) ("the fact of enforcing a valid copyright, without more, simply cannot constitute copyright misuse"); *Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 370 (E.D. Va. 1994) (where copyright holder was "simply attempting to protect the rights accruing to it as the

33

holder of valid copyrights," its "enforcement of its copyrights does not constitute copyright misuse"). Accordingly, because Omega's objective conduct—using its copyright in the Omega Globe Design to control the distribution, including the importation, of this copyrighted design as engraved on Seamaster watches—was authorized by copyright law, its subjective motivation for creating the Omega Globe Design and engraving it on Seamaster watches has no bearing on whether or not Omega committed copyright misuse.

In any event, there is nothing improper about a copyright holder intending to incorporate a copyrighted design in an industrial article in order to exercise the exclusive rights conferred by its copyright to control the distribution of its work. *Mazer,* 347 U.S. at 218-19;[11] *see also Rosenthal*, 205 F.2d at 637 ("'Copyright protection is not reserved exclusively to proprietors who do not intend to earn money by commercialization of their art.'") Accordingly, the district court's order

_____

[11] As the Supreme Court in *Mazer* explained, nothing in copyright law "support[s] the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates" the copyright, and the copyright holder may therefore "prevent use of" copies of copyrighted works "as [they are] incorporated in some other article." *Mazer*, 347 U.S. at 218.

granting summary judgment in favor of Costco based on copyright misuse should be reversed.

## II. THE DISTRICT COURT ERRED IN DENYING PARTIAL SUMMARY JUDGMENT IN OMEGA'S FAVOR ON COSTCO'S TWO AFFIRMATIVE DEFENSES BASED ON COPYRIGHT MISUSE.[12]

Omega cross-moved in the district court for partial summary judgment on Costco's tenth and eleventh affirmative defenses, which are predicated on the theory of copyright misuse. (2 ER 167-169.) For the reasons demonstrated in Section I, *supra*, the defense of copyright misuse does not apply here as a matter of law.

Accordingly, the case should be remanded with directions to the district court to enter partial summary judgment in Omega's favor on Costco's tenth and eleventh affirmative defenses.

---

[12] "Summary judgment is appropriate if the record discloses 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment s a matter of law.' Ordinarily, the denial of summary judgment is not a final order and is thus unappealable. However, an order denying summary judgment is reviewable when, as is the case here, it is coupled with a grant of summary judgment to the opposing party. We review both a denial and grant of summary judgment de novo." *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir. 2002) (internal citations omitted).

## CONCLUSION

For all the above reasons, this Court should reverse the judgment and direct the district court to enter partial summary judgment for Omega on Costco's tenth and eleventh affirmative defenses.

June 1, 2012          **HORVITZ & LEVY LLP**
           BARRY R. LEVY
           JOHN A. TAYLOR, JR.
           FELIX SHAFIR
         **COLLEN IP**
           JESS M. COLLEN
           THOMAS P. GULICK

By:   s/ Barry R. Levy

Attorneys for Plaintiff and Appellant
**Omega S.A.**

## STATEMENT OF RELATED CASES

This action gave rise to an earlier appeal, *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982 (9th Cir. 2008).

# CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS (Fed. R. App. P. 32(a)(7)(C))

☒ 1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains 7,127 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

☐ this brief uses monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

☒ 2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using MS-Word in 14-point Century Schoolbook font type, or

☐ this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

June 1, 2012                              s/ Barry R. Levy
Date                                    **ATTORNEY'S NAME**

38

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature: <u>s/ Barry R. Levy</u>