No. 11-57137

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## OMEGA S.A.,

PLAINTIFF-APPELLANT,

**v.**

## COSTCO WHOLESALE CORPORATION,

DEFENDANT-APPELLEE.

On Appeal From The United States District Court
For The Central District of California
Case No. 2:04-cv-05443-TJH (RCx)
Honorable Terry J. Hatter, District Judge

## BRIEF OF INTELLECTUAL PROPERTY LAW PROFESSORS AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE

EDWARD LEE (CSB 182895)
IIT CHICAGO-KENT COLLEGE OF
  LAW
565 W. Adams Street
Chicago, IL 60661
Telephone: 312-906-5212
Facsimile: 312-906-5280
*Counsel for* Amici Curiae

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF *AMICI CURIAE* .................................................1

SUMMARY OF ARGUMENT .................................................................................1

ARGUMENT ..........................................................................................................2

I.  LEVERAGING A COPYRIGHT FOR AN INCIDENTAL INSIGNIA TO
    APPLY TO THE ENTIRE UNCOPYRIGHTABLE DEVICE ON WHICH
    THE INSIGNIA IS ATTACHED IS COPYRIGHT MISUSE BECAUSE IT
    CONFLICTS WITH TRADEMARK LAW'S PRO-COMPETITION
    POLICY. .....................................................................................................2

    A.   Under *Dastar*, Courts Must Ensure Copyright and Trademark Law
         Are Not Used to Undermine Each Other ...............................................3

    B.   Omega's Tactic of Leveraging a Copyrighted Insignia on the Back
         of Its Watch Undermines Trademark Law ............................................6

II. PREVENTING LEGITIMATE FAIR USES IS COPYRIGHT MISUSE .. 15

    A.   Thwarting Fair Use Is Copyright Misuse ...........................................16

    B.   Fair Use Applies to Distribution and Importation Rights ..................18

    C.   Where a Copyright Owner Has Tacked on a Copyrighted Insignia to
         Useful Articles, the Redistribution of the Incidental Copyrighted
         Insignia on the Useful Articles Is Fair Use ........................................19

         1.   Nature of copyrighted work: tiny Omega insignia tacked on
              back of its watches ..................................................................20

         2.   Purpose of use: lawful distribution of useful articles ..............22

         3.   Amount and substantiality of use: reasonable in relation to
              purpose of use ..........................................................................26

         4.   Effect on market for copyrighted work: none ..........................27

i

CONCLUSION ................................................................................................. 29

APPENDIX A (List of Signatories) ............................................................... 30

CERTIFICATE OF COMPLIANCE ............................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Circuit Breaker Corp. v. Oregon Breakers Inc.*,
406 F.3d 577 (9th Cir. 2005) ........................................................7, 23

*Anti-Monopoly, Inc. v. General Mills Fun Group*,
611 F.2d 296 (9th Cir. 1979) ...............................................................5

*Apple Inc. v. Psystar Corp.*,
658 F.3d 1150 (9th Cir . 2011) .............................................................2

*Baker v. Selden*,
101 U.S. 99 (1880).................................................................................4

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) ...............................................................24

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006) ...............................................................27

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)...............................................................................4

*Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*,
834 F.2d 1142 (2d Cir.1987) ..............................................................12

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994).................................................................18, 25, 26

*Chamberlain Group, Inc. v. Skylink Techs., Inc.*,
381 F.3d 1178 (Fed. Cir. 2004) ...........................................................9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003).........................................................................3, 5, 28

*Herring v. F.D.I.C.*,
    82 F.3d 282 (9th Cir. 1995) ...............................................................15

*John Muller & Co. v. New York Arrows Soccer Team, Inc.*,
    802 F.2d 989 (8th Cir. 1986) ..............................................................22

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988)...............................................................................6

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ......................................................23, 25

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    132 S. Ct. 1905 (U.S. April 16, 2012) ..............................................13

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995) ................................................................12

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
    345 F.3d 1140 (9th Cir. 2003) ..........................................................12

*Lasercomb America, Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990) ...............................................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2005) ...................................................8, 9, 21

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ......................................................4, 28

*Mazer v. Stein*,
    347 U.S. 201 (1954)...............................................................................9

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ...............................................................9

*NEC Electronics, Inc. v. CAL Circuit Abco, Inc.*,
    810 F.2d 1506 (9th Cir. 1987) .............................................................6

*Nunez v. Caribbean Int'l News Corp.*,
235 F.3d 18 (1st Cir. 2003) .................................................................24

*Omega S.A. v. Costco Wholesale Corp.*,
541 F.3d 982 (9th Cir. 2008) ...........................................................3, 13

*Online Policy Group v. Diebold, Inc.*,
337 F. Supp. 2d 1195 (N.D. Cal. 2004) ..............................................27

*Pacific & Southern Co. v. Duncan*,
744 F.2d 1490 (11th Cir. 1984) ..........................................................15

*Parfums Givenchy, Inc. v. Drug Emporium, Inc.*,
38 F.3d 477 (9th Cir. 1994) ................................................................11

*Practice Mgmt. Info. Corp. v. American Medical Ass'n*,
121 F.3d 516 (9th Cir. 1997) ..........................................................2, 16

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ................................. 18, 23, 24, 25, 26

*Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*,
523 U.S. 135 (1998) .......................................................................11, 19

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.*,
489 F.3d 474 (2d Cir. 2007) ...............................................................16

*Schloss v. Sweeney*,
515 F. Supp. 2d 1068 (N.D. Cal. 2007) ..............................................17

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
53 F.3d 1073 (9th Cir. 1995) ...........................................................6, 23

*Sega Enters., Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) ................................................... *passim*

*Sony Corp of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) .............................................................................26

*Sony Computer Entm't America, Inc. v. Bleem, LLC*,
  214 F.3d 1022 (9th Cir. 2000) ...............................................................24, 27, 28

*Sony Computer Entm't, Inc. v. Connectix Corp.*,
  203 F.3d 596 (9th Cir. 2000) ......................................................................20, 29

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*,
  74 F.3d 488 (4th Cir. 1996) ...............................................................................12

*Swatch S.A. v. New City, Inc.*,
  454 F. Supp. 2d 1245 (S.D. Fla. 2006) ...............................................................11

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
  532 U.S. 23 (2001)................................................................................................3

*United States v. Sigmond-Ballesteros*,
  285 F.3d 1117 (9th Cir. 2002) ...........................................................................14

*United States v. Van Winrow*,
  951 F.2d 1069 (9th Cir. 1991) ...........................................................................15

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
  342 F.3d 191 (3d Cir. 2003) ...............................................................................17

*Wall Data Inc. v. Los Angeles County Sheriff's Dept.*,
  447 F.3d 769 (9th Cir. 2006) ......................................................................16, 20

*World-Wide Church of God v. Philadelphia Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ....................................................................15, 16

*Zino Davidoff SA v. CVS Corp.*,
  571 F.3d 238 (2d Cir. 2009) ......................................................................13, 23

## U.S. Constitution

U.S. CONST. art. I, § 8, cl. 8. ....................................................................................14

**Statutes**

17 U.S.C.

§ 101.................................................................................................21

§ 107.............................................................................................19, 20

Tariff Act of 1930,
19 U.S.C. § 1526.............................................................................6

**Regulations**

16 C.F.R. § 14.15(c) (1980)...............................................................24

19 C.F.R. § 133.23(d) (2012).............................................................6

**Miscellaneous**

Australia Copyright Act of 1968,
§§ 44C, 10(1) ...............................................................................14

Dan L. Burk, *Anticircumvention Misuse*,
50 UCLA L. REV. 1095 (2003) ...........................................................9

Complaint, *Swatch S.A. v. New City Inc.*,
No. 1:06-cv-20162-PCH (filed 1/20/2006) ......................................11

*Euro-Excellence Inc. v. Kraft Canada Inc.*,
2007 SCC 37 ...................................................................................14

THE FEDERALIST No. 43, (J. Madison)
(New American Library ed. 1961) (1788).........................................16

CRAIG JOYCE ET AL., COPYRIGHT LAW
(8th ed. 2010) ................................................................................10

Kathryn Judge, Note, *Rethinking Copyright Misuse*,
57 STAN. L. REV. 901 (2004) ...........................................................17

Laundry Guide to Common Care Symbols.............................................................21

Mark Lemley, *Beyond Preemption: The Law and Policy of Intellectual Property Licensing*, 87 CAL. L. REV. 111 (1999)............................18

David S. Olson, *First Amendment Based Copyright Misuse*, 52 WM. & MARY L. REV. 537 (2010)..................................................................17

William F. Patry & Richard A. Posner, *Fair Use and Statutory Reform in the Wake of* Eldred, 92 CAL. L. REV. 1639 (2004) ...........................17

Michal Shur-Ofry, *Hatch-Waxmanizing Copyright*, 1 8 MICH. TELECOMM. & TECH. L. REV. 171 (2011)..............................................17

Singapore Copyright Act § 40A(1)........................................................................14

Squiggly's Watch World (display of Swatch Rip Tide watch) ...............................11

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici* are professors who teach and write about intellectual property law at law schools around the United States. A list of signatories is attached as Appendix A. *Amici* are interested in the development of copyright and trademark laws in ways that serve their respective public policies without fundamentally undermining each other.[1]

## SUMMARY OF ARGUMENT

Copyright is not an invitation for businesses to circumvent trademark law, much less to control the distribution of uncopyrightable, functional devices. *Amici* respectfully submit this brief to explain why Omega's attempt to stop others from reselling lawfully purchased Omega watches is copyright misuse, as the district court correctly found. The only part of the watch in which Omega claims copyright protection is a tiny insignia engraved on the back of the watch. However, instead of limiting its copyright to the insignia—a merely incidental feature of the watch that Omega strategically tacked on—Omega seeks to leverage the insignia's copyright to encompass the *entire* watch, which is functional and cannot be copyrighted. Omega's leveraging its copyright for a token feature to restrict the entire watch's redistribution conflicts with both trademark law's pro-

---

[1] No party or party's counsel authored or contributed money to fund this brief. Only *amici curiae* or their counsel contributed money to fund this brief. All parties consented to this brief's filing.

competition policy in allowing resale of lawfully purchased consumer goods and copyright law's policy of leaving functional devices to patent law for protection. Omega's conduct is misuse also because it circumvents Costco's fair use of the incidental insignia.

**ARGUMENT**

**I.**     **LEVERAGING A COPYRIGHT FOR AN INCIDENTAL INSIGNIA TO APPLY TO THE ENTIRE UNCOPYRIGHTABLE DEVICE ON WHICH THE INSIGNIA IS ATTACHED IS COPYRIGHT MISUSE BECAUSE IT CONFLICTS WITH TRADEMARK LAW'S PRO-COMPETITION POLICY**

Copyright misuse exists when the copyright owner has "used its copyright 'in a manner violative of the public policy embodied in the grant of a copyright.'" *Practice Mgmt. Info. Corp. v. American Medical Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997) (quoting *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990)), *amended by* 133 F.3d 1140 (9th Cir. 1998). Misuse includes "leveraging" a copyright to "control…areas outside the monopoly." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011) (citation omitted). The district court correctly found that Omega misused its copyright by attempting to leverage a minuscule insignia on the back of its uncopyrightable watches to stop the watches' further distribution after their lawful first sale abroad. 1 ER 3.[2] The district court's ruling

---

[2]     Although this Court ruled that copyright's first sale doctrine does not apply to "copies of the disputed [Omega] design" made and sold abroad, the ruling was limited to first sale and did not consider other defenses that might be raised later

2

is faithful to Supreme Court precedent instructing courts to police the boundaries between copyright and trademark law. To the extent Omega wishes to prevent the resale of its watches, its claim should be governed by trademark law, not copyright law. And because trademark law deems Costco's activity entirely lawful, Omega should not be allowed to bootstrap a token copyright on the back of its watch to circumvent trademark law's pro-competition policy.

> **A.    Under *Dastar*, Courts Must Ensure Copyright and Trademark Law Are Not Used to Undermine Each Other**

As the Supreme Court admonished, courts must police the boundaries between copyright and trademark law so as not to allow one to undermine the goals of the other. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the Court rejected a Lanham Act claim for "unaccredited copying of a work" whose copyright had expired because such a claim would "cause the Lanham Act to conflict with the law of copyright, which addresses that subject specifically" by allowing the public to freely copy, without attribution, works whose copyrights have expired. *Id.* at 25, 33. The Court was "'careful to caution against *misuse* or over-extension' of trademark…into areas traditionally occupied by patent or copyright." *Id.* at 34 (emphasis added) (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001)).

---

below. *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 983 (9th Cir. 2008), *aff'd by an equally divided Court*, 131 S. Ct. 565 (2010).

As *Dastar* instructs, strategic gaming of the IP systems should not be condoned. Each IP system serves different purposes and is subject to different requirements, scope, and limitations. Copyright is intended "to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003). But purely functional items cannot be copyrighted—they must satisfy the requirements of patent law for federal protection. *See Baker v. Selden*, 101 U.S. 99, 105 (1880) (rejecting copyright for useful system because protection "can only be secured … by letters-patent"). Unpatented useful items are subject to free competition in the marketplace enabling consumers to benefit with lower prices and greater rights to utilize the goods. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 153 (1989).

This Court has been careful to police the boundaries between intellectual property regimes since even before *Dastar*, particularly when the plaintiff's intellectual property claim attempted to improperly limit competition. For example, Sega, a video game console manufacturer, once included an initialization code in its game console that caused Sega's trademark to be displayed on the screen whenever a game cartridge was played on Sega's console. The intent of this maneuver was to stifle competition of third-party developers, whose games would

4

inevitably cause the appearance of Sega's trademark when played on the console with the proper initialization code, thereby constituting possible trademark infringement. *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1528-29 (9th Cir. 1992). In rejecting Sega's stratagem, this Court concluded that Sega's embedding of its trademark in the code of a game system as a way to stop competition was a "misuse" of its trademark: "'The trademark is misused if it serves to limit competition in the manufacture and sales of a product. That is the special province of the limited monopolies provided pursuant to the patent laws.'" *Id.* at 1530 (quoting *Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979)).

The importance of policing the boundaries of IP laws applies equally to Omega's attempt to inject copyright into areas traditionally governed by trademark law. Although *Dastar* and *Sega* are not copyright misuse cases, they both are misuse cases involving attempts to use the Lanham Act, the federal trademark statute, in a way that would undermine an important policy of copyright or patent law. The Supreme Court and this Court, respectively, characterized such attempts as a "misuse" of trademark law because they would let trademark law undermine what traditionally is the province of copyright or patents. *Dastar*, 539 U.S. at 34; *Sega*, 977 F.2d at 1530. That same principle of misuse should apply here where

the leveraging is simply in reverse: leveraging of the Copyright Act to undermine trademark law.

### B. Omega's Tactic of Leveraging a Copyrighted Insignia on the Back of Its Watch Undermines Trademark Law

Omega's leveraging a copyright for its minuscule insignia to prevent Costco from selling the entire watch is copyright misuse because it undermines trademark law's policy in free competition in the secondary market for unpatented useful goods. As this Court recognized, "[since 1924,] courts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). This rule benefits the public because "the 'first sale' rule [in trademark law] preserves an area for competition by limiting the producer's power to control the resale of its product." *Id.* at 1075.

Congress and the Customs Service have recognized a public policy to allow resale of trademarked goods once sold—either here or abroad—by the trademark owner or an entity under its common control. *See* Tariff Act of 1930, 19 U.S.C. § 1526 (§ 526 prohibition on importation of U.S. entity's trademarked goods without consent); 19 C.F.R. § 133.23(d) (2012) (common control exception); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 286-91 (1988) (explaining § 526, common control exception); *NEC Electronics, Inc. v. CAL Circuit Abco, Inc.*, 810 F.2d 1506, 1510

6

n.4 (9th Cir. 1987). The broad policy allowing resale of genuine goods applies equally to the trademark holder's foreign-made goods. *See American Circuit Breaker Corp. v. Oregon Breakers Inc*., 406 F.3d 577, 583 (9th Cir. 2005). Without such a policy, well-established competitive secondary markets for consumer goods at garage sales, flea markets, websites like eBay, and discount stores could not exist.

Thus, once the trademark owner—here, Omega—has sold its goods, either here or abroad, the owner has exhausted its distributional rights to those genuine goods and has no right to control the further distribution of those goods in the stream of commerce. *See American Circuit Breaker*, 406 F.3d at 585 ("'Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent.'") (citation omitted). There is no dispute that the Omega watches sold by Costco were genuine Omega watches with trademarks applied by Omega.

U.S. trademark law therefore permits Costco and others to resell lawfully purchased, genuine trademarked goods sold by the authority of the trademark owner. American consumers benefit by having the ability to purchase genuine Omega watches in the United States at a price ($1,299) 35% lower than Omega's retail price ($1,995). 1 ER 1. However, in order to circumvent this well-established doctrine of trademark law, Omega's Legal Department advised the

company to add a minuscule engraved insignia to the back of its watches. *See* 1

ER 3 ("Omega concedes that a purpose of the copyrighted Omega Globe Design

was to control the importation and sale of its watches containing the design, as the

watches could not be copyrighted."); 2 SER 132-34, 153-65, 170-71. Omega's

aim in doing so was to be able to claim that Costco's sales of genuine Omega

watches effected an unauthorized distribution of *the insignia* and thus constituted

copyright infringement. As the district court correctly ruled, Omega's attempt to

restrain the trade of watches by adding a small insignia to the back is copyright

misuse. *Cf. Sega*, 977 F.2d at 1530 (misuse of trademark to embed code in

program to display the trademark as stratagem to restrain competition).

Courts in other contexts have rejected attempts by device manufacturers who

sought to leverage incidental copyrighted works to protect their functional devices

under copyright and thereby suppress competition. For example, the Sixth Circuit

rejected an anti-circumvention claim under the Digital Millennium Copyright Act

(DMCA) brought by a printer cartridge manufacturer who asserted copyrights in

the short computer programs in its devices to fall within the DMCA's anti-

circumvention protections for copyrighted works. *Lexmark Int'l, Inc. v. Static

Control Components, Inc.*, 387 F.3d 522, 544 (6th Cir. 2005). Thus, by inserting a

small bit of computer code assertedly protected by copyright, the manufacturer

hoped to have copyright law protect its printer cartridges even though they were uncopyrightable useful articles.

Although the case did not involve a copyright misuse defense, the court focused on the nature of the asserted copyrighted work—a short computer program controlling access to a device—in determining the DMCA did *not* apply to protect the device. *Lexmark,* 387 F.3d at 544 (lock-out code to printer cartridge was functional and not copyrightable).[3] The scenario in *Lexmark* can be viewed as a "misuse" of the DMCA. *See* Dan L. Burk, *Anticircumvention Misuse*, 50 UCLA L. Rev. 1095, 1137 (2003).

Contrary to Omega's argument, *Mazer v. Stein*, 347 U.S. 201 (1954), helps to illuminate the misuse at play in Omega's claim. In *Mazer*, the copyrighted works were statuettes of several dancing figures that were sold both as standalone statuettes and as part of a lamp, serving as its base. *Id.* at 202-03. As a part of the lamp, the statuette (shown below) was an integral and prominent feature, which consumers would have immediately recognized and valued in buying the lamp.

---

[3]     *See also Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1204 (Fed. Cir. 2004) (rejecting DMCA claim on garage door opener because plaintiff's copyright had "no reasonable relationship" to the access to plaintiff's copyrighted software allowed by defendant's garage door opener); *but see MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 950 (9th Cir. 2010) (disagreeing with *Chamberlain*'s test to DMCA as contrary to DMCA's text), *amended by* 2011 WL 538748 (9th Cir. Feb. 17, 2011).



*See* CRAIG JOYCE ET AL., COPYRIGHT LAW 176 (8th ed. 2010). As such, the statuette constituted an expressive communication as a work of art while also serving the function of providing the base of the lamp. Therefore, it would not have been copyright misuse for the copyright owner to assert its copyright to stop others from distributing infringing copies of the statuette embodied in other lamps. The statuette was a significant feature of the lamp.

By contrast, here Omega's insignia is merely incidental to the useful article. The insignia cannot even be seen by anyone when the watch is worn. Omega added the insignia to the back of the watch not for its aesthetic appeal, but instead for its legal effect as an attempt to stop parallel importation of the watches under copyright law. 1 ER 3. Unlike the statuette in *Mazer*, Omega's insignia has never been sold as an artistic work or served as a prominent feature in the sale of the useful articles involved. Indeed, Omega's Seamaster watch was sold for over 50

years *without* the insignia. 2 SER 218, 230-31. By all measures, including its obscure placement, minuscule size, and history of development, the insignia constitutes only an insignificant or incidental part of the Omega watch—one that consumers might not even recognize.[4]

This Court should hold that it is a misuse of copyright for Omega to leverage its copyright in a tiny insignia to the entire uncopyrightable watch in order to stop the importation and distribution of the watch in conflict with trademark law's pro-competition policy. Useful articles that have a merely incidental copyrighted feature added to restrict competition in the resale of the entire articles are not entitled to the protection of copyright law to stop the resale. To determine whether a copyrighted feature is incidental, courts should examine the circumstances of each case, including such factors as: (1) the size of the design feature in relation to

---

[4] The other cases relied on by Omega are inapposite. They did not consider copyright misuse. *See Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135 (1998); *Parfums Givenchy, Inc. v. Drug Emporium, Inc.,* 38 F.3d 477 (9th Cir. 1994).

Nor was copyright misuse considered in *Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245 (S.D. Fla. 2006), a case involving Swatch watches. Unlike the incidental insignia on the back of Omega's watch, Swatch "featured [the copyrighted work] in their watches, as part of the artwork of the dial, the design of the band, or unique watch bracelets." Complaint, Swatch S.A. v. New City Inc., No. 1:06-cv-20162-PCH, ¶ 43 (filed 1/20/2006). For a photo of the Swatch Rip Tide watch, a watch involved in *Swatch* (*id.* ¶ 57), see http://www.squiggly.com/us/en/swatch/rip-tide-sugm102.htm. Therefore, *Swatch* provides no authority for allowing a token copyright on an incidental feature of Omega's watch to extend to the entire watch.

the useful article, (2) the placement of the feature, (3) the history of the design and whether its addition was significantly influenced by a desire to avoid trademark law's pro-competition policy, (4) whether a reasonable consumer would purchase the useful article because of the design feature, and (5) whether the design feature has been separately sold, licensed, or marketed. All of these factors confirm the incidental nature of Omega's insignia on the back of its watch.

A contrary ruling would create a massive loophole that would allow all trademark owners to copyright small insignias tacked onto their goods and thereby circumvent trademark law's policy of allowing resale of genuine goods. For example, clothing manufacturers could transform their garments—useful articles typically uncopyrightable—into copyrighted works simply by sticking a small insignia on the back tag on the inside of the garment. *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) ("[C]lothes are not copyrightable."). Manufacturers of kitchen appliances like toasters and coffee makers could do the same simply by attaching a small insignia like Omega's. *Every* useful article—a lamp, a bike rack, a piece of furniture, etc.—could magically be copyrighted by tacking on a small insignia to the underside of the functional device. *Cf. Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) (lamp); *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1146-47 (2d Cir.1987) (bike rack); *Superior Form Builders, Inc. v.*

12

*Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 493 (4th Cir. 1996) (chair). The mere insertion of copyrighted insignia, labels, logos, instruction manuals, or warranties—all of which are technically protected by copyrights—on the good or its packaging would make every device copyrighted. Copyright would swallow the entire universe of *all* consumer goods, no matter how functional.

Such a result would encourage U.S. manufacturers to relocate to foreign countries, in order to gain the favorable interpretation of copyright law that its first sale doctrine does not apply to foreign-made goods. *See Omega*, 541 F.3d at 986 (exception if works sold in U.S.); *but see Kirtsaeng v. John Wiley & Sons, Inc.*, 132 S. Ct. 1905 (U.S. April 16, 2012) (granting review of copyright first-sale doctrine). U.S. goods manufacturers could follow Omega's lead offshore.

If Omega's tactic is permitted, Costco would face a hopeless Catch-22. Costco could avoid copyright infringement in reselling Omega watches by obliterating the copyrighted insignia from the watch—but thereby risk violating trademark law when reselling the watch. *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246 (2d Cir. 2009) (CVS's removal of codes on packaging, bottles, and labels of Swiss company's genuine goods may render goods "materially different" and thus trademark infringement). This Catch-22 applies not only to Costco, but to anyone who purchased an Omega watch overseas and wanted to resell it lawfully in the United States. Such resellers face an untenable "damned if you do, equally

damned if you don't" situation. *Cf. United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1122 (9th Cir. 2002) (rejecting such a predicament stemming from untenable view that reasonable suspicion under Fourth Amendment can be created by driving consistent with California safe-driving advice).

Omega's stratagem should be rejected. It fails to serve the purpose of copyright—that is, the promotion of progress and learning. *See* U.S. CONST. art. I, § 8, cl. 8. And it threatens to undermine trademark law's central role in regulating the secondary market for unpatented useful goods.

Because of the strong public policy in favor of competition, other countries have recognized that this type of incidental or token copyrighted work does not deserve full copyright protection to stop parallel imports of goods. *See* Australia Copyright Act of 1968, §§ 44C, 10(1), http://www.wipo.int/wipolex/en/text.jsp?file_id=226341 (importation or sale of article does not infringe copyright embodied in mere "accessory," such as label incorporated into surface of article); Singapore Copyright Act § 40A(1), http://www.wipo.int/wipolex/en/text.jsp?file_id=187736 (comparable provision); *see also Euro-Excellence Inc. v. Kraft Canada Inc.*, 2007 SCC 37 (plurality) (Kraft not allowed to stop, under Canadian copyright law, importation of lawfully purchased Toblerone chocolate with its copyrighted logo on packaging); *id.* at ¶¶ 99-105 (Bastarache, J., concurring) ("Toblerone logos … considered as

copyrighted works…cannot be seen as anything other than merely incidental to the chocolate bars to which they are affixed").

In short, Omega should not be allowed to convert copyright into a restraint on trade by tacking an insignia onto the back of a watch.

## II. PREVENTING LEGITIMATE FAIR USES IS COPYRIGHT MISUSE

*Amici* offer an additional basis to support the district court's finding of misuse: Omega's attempt to stop, en masse, the further distribution of its watches in the United States after first sale abroad is a copyright misuse because it attempts to prevent fair uses of the insignia in connection with the lawful distribution of the goods under U.S. trademark law. Although fair use was not yet raised or considered below as a separate defense, it is relevant to the district court's finding of copyright misuse as an additional basis to support the decision.

This Court "may affirm on any basis the record supports, including one the district court did not reach." *Herring v. F.D.I.C.*, 82 F.3d 282, 284 (9th Cir. 1995); *see also United States v. Van Winrow*, 951 F.2d 1069, 1072 (9th Cir. 1991) (court may decide legal issue raised by *amicus curiae* and adopted by party on appeal). Moreover, this Court need not remand for further fact-finding on fair use where "the record is sufficient to evaluate each of the statutory factors [of fair use]." *World-Wide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000); *see Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1495

(11th Cir. 1984). Fair use is a mixed question of law and fact, but "if … a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." *Worldwide Church*, 227 F.3d at 1115. Alternatively, if this Court finds additional fact-finding is necessary, this Court should remand the case to the district court below. *Cf. Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 483 (2d Cir. 2007) (remand for findings on fair use as it pertained to enforceability in U.S. of French judgment protecting fashion design).

### A. Thwarting Fair Use Is Copyright Misuse

Copyright misuse exists when the copyright owner has "used its copyright 'in a manner violative of the public policy embodied in the grant of a copyright.'" *Practice Mgmt.*, 121 F.3d at 521 (citation omitted). A critically important public policy under copyright law is to allow sufficient breathing room for the public to engage in fair uses of copyrighted works. "The fair use defense buttresses the basic goal of copyright law: to put copyrighted works to their most beneficial use so that 'the public good fully coincides…with the claims of individuals.'" *Wall Data Inc. v. Los Angeles County Sheriff's Dept*., 447 F.3d 769, 777 (9th Cir. 2006) (quoting THE FEDERALIST No. 43, at 267 (J. Madison) (New American Library ed. 1961) (1788)).

Thus, using a copyright in a manner to thwart the public's ability to engage

in legitimate fair use is a misuse of copyright. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 204-05 (3d Cir. 2003) (misuse may be found where copyright holder leverages copyright to undermine fair use or idea/expression doctrines); *Schloss v. Sweeney*, 515 F. Supp. 2d 1068, 1080-81 (N.D. Cal. 2007) (allegations sufficient to state misuse claim where copyright holder stopped scholar from using, as a supplement to her book on Joyce, letters, the dissemination of which scholar claimed was fair use); William F. Patry & Richard A. Posner, *Fair Use and Statutory Reform in the Wake of* Eldred, 92 CAL. L. REV. 1639, 1659 (2004) ("Exaggerating the substantive rights of a copyright owner by denying in effect the fair use privilege…seems an equally serious form of copyright overclaiming."); *id.* at 1658 (copyright overclaiming should be dealt with by copyright misuse).[5]

The advantage of treating mass denials of fair use under copyright misuse is that the remedy for misuse is broader. Unlike in a simple fair use defense that applies to a party, "courts refuse to enforce the misuser's copyrights against anyone." David S. Olson, *First Amendment Based Copyright Misuse*, 52 WM. & MARY L. REV. 537, 544 (2010). Moreover, "copyright misuse can't be waived by

---

[5]     *See also* Kathryn Judge, Note, *Rethinking Copyright Misuse*, 57 STAN. L. REV. 901, 930-32 (2004) (proposal for courts to clarify that "any attempt by a copyright holder…to deter fair use of his copyrighted material is deemed misuse"); Michal Shur-Ofry, *Hatch-Waxmanizing Copyright*, 18 MICH. TELECOMM. & TECH. L. REV. 171, 183 (2011) (similar proposal).

contract." Mark Lemley, *Beyond Preemption: The Law and Policy of Intellectual Property Licensing*, 87 CAL. L. REV. 111, 157 (1999).

This additional ground of copyright misuse supports the district court's decision. As explained below, Omega's attempt to stop the dissemination of lawfully sold Omega watches is a misuse of copyright because it thwarts the public's ability to engage in lawful fair use of the insignia in connection with the legitimate resale of the watches as permitted by trademark law.

### B.    Fair Use Applies to Distribution and Importation Rights

Fair use is "'an equitable rule of reason'" that allows courts to decide, on a case-by-case basis, whether unauthorized uses of copyrighted works should be permitted. *Sega*, 977 F.2d at 1522 (citation omitted). As this Court instructed, "We must be flexible in applying a fair use analysis; it 'is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis.'" *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1163 (9th Cir. 2007) (quoting *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 577-78 (1994)).

Section 107, the fair use provision, applies to *all* exclusive rights of copyright under § 106, including the distribution right. As the text states:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple

copies for classroom use), scholarship, or research, is not an infringement of copyright.

17 U.S.C. § 107.

Likewise, the right of importation under § 602 is subject to the same exceptions, including fair use. As the Supreme Court explained in the context of the first sale doctrine:

> [§ 602] does not categorically prohibit the unauthorized importation of copyrighted materials. Instead, it provides that such importation is an infringement of the exclusive right to distribute copies "under section 106." … [T]he exclusive right to distribute is a limited right. The introductory language in § 106 expressly states that all of the exclusive rights granted by that section—including, of course, the distribution right granted by subsection (3)—are limited by the provisions of §§ 107 through 120.

*Quality King*, 523 U.S. at 144 (footnotes omitted). The Court cited § 107, the fair use provision, as applying to both the importation and distribution rights, *id.*—the two exclusive rights invoked by Omega against Costco's resale of Omega watches.

## C. Where a Copyright Owner Has Tacked on a Copyrighted Insignia to Useful Articles, the Redistribution of the Incidental Copyrighted Insignia on the Useful Articles Is Fair Use

As an issue of first impression, this Court should hold that, under U.S. copyright law, the importation and distribution of a lawfully purchased useful article without removing a copyrighted insignia that is merely incidental to the useful article constitute fair uses of the insignia.

In deciding fair use, courts consider four factors:

19

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  The Court may consider a use to be fair "where the 'custom or public policy' at the time would have defined the use as reasonable."  *Wall Data*, 447 F.3d at 778 (citation omitted).  In this case, all four factors militate strongly in favor of fair use.

### 1.  Nature of copyrighted work: tiny Omega insignia tacked on back of its watches

This is an unusual "copyright" case, if a copyright case at all.  Given the peculiar nature of the alleged copyrighted work, it is helpful to consider first the nature of the copyrighted work, or the second factor under §107.  *Cf. Sega*, 977 F.2d at 1522-27 (analyzing four factors in different order tailored to facts of case).  In examining this factor, courts give broader copyright protection to creative works and a lesser scope of protection to functional works.  *See Wall Data*, 447 F.3d at 780 (creative works deserve more protection than "informational and functional works"); *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000) (functional operating system "lies at a distance from the core [of copyright]").

The nature of the copyrighted work cuts strongly in favor of fair use. This case involves an uncopyrightable, functional watch, with a barely perceptible insignia—only one-eighth of an inch in size—tacked on the backside.



2 SER 175. The insignia consists of three etched circles, with three Greek letter omegas and two stars inside. The insignia is about as small and simplistic as the laundry care labels on the back tag inside of most garments. *See* Laundry Guide to Common Care Symbols, http://www.textileaffairs.com/lguide.htm.

The watches themselves are, of course, useful articles that fall outside the scope of copyright. *See* 17 U.S.C. § 101 (useful article definition); 1 ER 3 ("the [Omega] watches could not be copyrighted"). Thus, the watches would normally be analyzed as trademarked goods for the purposes of exhaustion.

The tacked-on nature of Omega's insignia on the back of the watch demonstrates how incidental and insignificant the insignia is for copyright purposes. *Cf. Lexmark Int'l*, 387 F.3d at 544 (concluding that a poem used as a lock-out code to printer cartridge is not copyrightable because poem is used to

21

copyright an otherwise unprotectable functional work). Indeed, the minuscule insignia may lack sufficient creativity to satisfy the originality requirement for copyright. *See John Muller & Co. v. New York Arrows Soccer Team, Inc.*, 802 F.2d 989, 990 (8th Cir. 1986) (not enough creativity in logo consisting of four lines depicting an arrow with "arrows" in cursive writing below arrow). A reasonable consumer buying the Omega watch would have no reason to believe that the Omega watch, a mechanical device, contained any copyrighted material at all. Omega apparently did *not* want to publicize the insignia, much less forewarn lawful purchasers of the putative copyrighted work lurking almost imperceptibly on the back of its watch. 2 SER 91-92, 104-07, 111-14. Indeed, Costco first learned about Omega's asserted copyright over the insignia on the back of the watch only after being sued by Omega. 2 SER 69.

In sum, the nature of Omega's incidental copyrighted work favors fair use. The putative copyrighted work is an insignificant "add on" to a useful article, an uncopyrightable watch. *Cf. Sega*, 977 F.2d at 1524 (second factor weighs in favor of fair use where copying of work is necessary to access unprotected functional element).

### 2. Purpose of use: lawful distribution of useful articles

The first fair use factor also militates strongly in favor of fair use. The purpose of Costco's use of the incidental copyrighted insignia was to serve the

public with the lawful distribution of the uncopyrightable watches—first sold with Omega's consent—as permitted by trademark law. *See American Circuit Breaker*, 406 F.3d at 585.

The benefit to the public is an important consideration in the fair use analysis. *See Perfect 10*, 508 F.3d at 1165 (social benefit of visual search engines); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) (same); *Sega*, 977 F.2d at 1523 ("[W]e are free to consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially."). American consumers benefit from a competitive secondary market for useful consumer goods. *See Sebastian Int'l*, 53 F.3d at 1075. Indeed, American consumers benefited by being able to purchase genuine Omega watches at a competitive price, 35% cheaper than Omega's retail price. 1 ER 1.

The fact that Costco kept Omega's copyrighted insignia on the genuine Omega watches Costco sold was entirely consistent with trademark law's policy of competition in the secondary market and consumer protection. Costco had no purpose in distributing the watch with its insignia on the back other than to sell the watches as unaltered genuine goods, as permitted by trademark law. Indeed, had Costco altered the Omega watch in any way, Costco would risk a trademark infringement claim by Omega that the watch was "materially different" and not a genuine good. *See Zino Davidoff*, 571 F.3d at 246.

Thus, to the extent Omega asserts that its insignia on the back of its watch was intended to serve an aesthetic purpose under copyright, Costco's purpose in distributing the watch was different and transformative. *Cf. Perfect 10*, 508 F.3d at 1165 (search engine's copying of photographs had transformative purpose because copies had different function of Internet search versus author's aesthetic function); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22-23 (1st Cir. 2003) (newspaper's use of photographs to inform had transformative purpose because it was not just to entertain); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 610 (2d Cir. 2006) (book's copying of band's posters in timeline had transformative purpose because biographical purpose was different from original artistic and promotional purpose). Here, Costco's transformative purpose was to resell the watches as genuine goods in the secondary market, as permitted by trademark law, in a way that benefits American consumers. *Cf. Sony Computer Entm't America, Inc. v. Bleem, LLC*, 214 F.3d 1022 (9th Cir. 2000) (fair use purpose in use of copyrighted material in comparative advertising, which "is a source of important information to consumers" and "can lead to lower prices in the marketplace") (quoting FTC rule, 16 C.F.R. § 14.15(c) (1980)).

This is not a case involving a copyrighted design that was a significant feature of a useful article, such as in *Mazer*. In that scenario, a reseller could not invoke a legitimate fair use purpose in reselling the work that has a significant

copyrighted feature—copyright would properly govern the resale of the work there and fair use would provide no defense in the typical case. By contrast, because the entire Omega watch is uncopyrightable (save an incidental insignia), Costco has a legitimate fair use purpose to resell the uncopyrightable watch as permitted by trademark law.

The commerciality of Costco's activity in distributing Omega watches does not militate against fair use of the insignia. *See Campbell*, 510 U.S. at 585 (use's commercial nature does not presumptively weigh against fair use). In *Sega*, this Court found a fair use in the copying of a computer program to identify its unprotected functional elements to make the defendant's own program compatible with video game consoles sold by the plaintiff. 977 F.2d at 1522-23. This Court "conclude[d] that [defendant] copied [plaintiff]'s code for a legitimate, essentially non-exploitative purpose, and that the commercial aspect of its use can best be described as of minimal significance." *Id.* at 1523; *see also Perfect 10*, 508 F.3d at 1165 (use of copyrighted photographs was incidental to creating a search tool to find content on Internet); *Kelly*, 336 F.3d at 819 (same).

The same principle applies here. Costco's use of the copyrighted insignia on the back of Omega's watches had "minimal significance" commercially. Costco did not—nor did Omega, for that matter—ever attempt to market the insignia on the back of the watch as a way to sell the Omega watch itself before this lawsuit

arose. 2 SER 68-69, 91-92, 104-07, 111-14. Similar to the defendant in *Sega*, Costco had the legitimate goal of entering the secondary market for genuine, uncopyrighted watches in competition with the brand manufacturers, as permitted by trademark law. That purpose benefits the public and consumers by giving them access to less expensive genuine goods in a more competitive market, such as, in this case, genuine Omega watches priced at a 35% discount. 1 ER 1. Costco's legitimate purpose in distributing Omega watches at cheaper prices to American consumers cuts in favor of fair use.

### 3. Amount and substantiality of use: reasonable in relation to purpose of use

The third factor supports a finding of fair use. The Court must ask "whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole...are reasonable in relation to the purpose of the [use]." *Perfect 10*, 508 F.3d at 1167 (quoting *Campbell*, 510 U.S. at 586). Using the entirety of a work may be allowed if it is reasonable to the purpose of the use. *See Sony Corp of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984) (copying entire TV show was reasonable for purpose of time-shift recordings for later home viewing); *Perfect 10*, 508 F.3d at 1167-68 (copies of entire photographs reasonable for search function): *Sega*, 977 F.2d at 1526-27 ("very little weight" given to third factor where verbatim use of plaintiff's program was limited).

Costco's use of the insignia on the back of the watch was reasonable in light of Costco's purpose in lawfully reselling the watches as genuine goods. Costco made no use of the insignia other than to leave the watch in its original, unaltered state and to sell it as a genuine good as permitted by trademark law.

### 4. Effect on market for copyrighted work: none

Finally, the fourth factor cuts decisively in favor of fair use. Put simply, there is absolutely no effect on the potential market for or value of the *copyrighted work*. The Omega insignia on the back of the watch has no independent value as a copyrighted work. Omega does not sell or license the insignia separately, or even make it a selling point of its watches. 2 SER 262; *see Blanch v. Koons*, 467 F.3d 244, 258 (2d Cir. 2006) (no harm to market for photograph that had never been licensed or marketed for licensing, and that had not been shown to have diminished in value from defendant's use); *Bleem*, 214 F.3d at 1029 (factor four favored fair use because no market existed for screen shots to use in comparative advertising and defendant's use had "no noticeable effect on [copyright owner's] ability to do with its screen shots what it chooses"); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1203 (N.D. Cal. 2004) (no harm to putative market for internal corporate emails by defendants' publication of emails, given lack of harm shown to commercial value of emails).

The substantial public benefit gained from allowing Costco and others to develop a robust secondary market in consumer goods greatly outweighs the lack of harm to Omega's minuscule insignia. *See Mattel*, 353 F.3d at 805 ("The less adverse effect that an alleged infringing use has on the copyright owner's expectation of gain, the less public benefit need be shown to justify the use.") (citations omitted); *Bleem*, 214 F.3d at 1027 ("Although [defendant] is most certainly copying [plaintiff's] copyrighted material for commercial purposes of increasing its own sales, such comparative advertising redounds greatly to the purchasing public's benefit with very little corresponding loss to the integrity of [plaintiff's] copyrighted material.").

In sum, the Court should hold that Omega's attempt to stop Costco's sale of lawfully purchased Omega watches is copyright misuse on the additional ground that Costco's distribution of the insignia is protected by fair use. Given the substantial benefit Costco's more affordable goods provide to American consumers, and the lack of a corresponding harm to Omega's copyright interests, the balance of factors cuts heavily in favor of fair use.

What Omega really seeks to do is to circumvent trademark law, and to use a copyright to obtain a monopoly over its functional watch, effectively creating a mutant form of copyright law. *Cf. Dastar*, 539 U.S. 34 (rejecting Lanham Act interpretation that "would create a species of mutant copyright law"). But, as this

Court has recognized, one must obtain and seek to enforce a patent before intellectual property law will allow a monopoly over functional items. *See Connectix*, 203 F.3d at 605. To borrow this Court's language in *Connectix*, "This [Omega] has not done." *Id.*

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

/s/ Edward Lee

EDWARD LEE
IIT CHICAGO-KENT COLLEGE OF
 LAW
565 W. Adams Street
Chicago, IL 60661
312-906-5212

Counsel for *Amici Curiae*

July 25, 2012

# APPENDIX A

**List of Signatories**[*]

Professor Annemarie Bridy
University of Idaho College of Law

Professor Dan L. Burk
Chancellor's Professor of Law
University of California, Irvine School of Law

Professor Irene Calboli
Marquette University Law School

Professor Michael Carroll
American University Washington College of Law

Professor Margaret Chon
Donald and Lynda Horowitz Professor for the Pursuit of Justice
Seattle University School of Law

Professor David Fagundes
Southwestern Law School

Professor William T. Gallagher
Golden Gate University School of Law

Professor Shubha Ghosh
Vilas Research Professor of Law
University of Wisconsin Law School

Professor Eric Goldman
Director, High Tech Law Institute
Santa Clara University School of Law

Professor James Grimmelmann
New York Law School

---

[*] Institutions listed for identification purposes only.

Professor Leah Chan Grinvald
Saint Louis University School of Law

Professor Paul Heald
University of Illinois College of Law

Professor Laura A. Heymann
Class of 2014 Professor of Law
College of William & Mary - Marshall-Wythe School of Law

Professor Edward Lee
Director, Program in Intellectual Property Law
IIT Chicago-Kent College of Law

Professor Mark A. Lemley
William H. Neukom Professor
Stanford Law School

Professor Jacqueline Lipton
Baker Botts Professor of Law
University of Houston Law Center

Professor Pamela Samuelson
Richard M. Sherman Distinguished Professor
Berkeley Law School

Professor Rebecca Tushnet
Georgetown University Law Center

Professor Jennifer Urban
Berkeley Law School

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATION,**
**TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**
**PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify as follows:

1.       This Brief of Intellectual Property Law Professors as *Amici Curiae* In Support Of Defendant-Appellee and Affirmance complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.       This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated: July 25, 2012                    By:   /s/ Edward Lee__

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 25, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 25, 2012                    By:   /s/ Edward Lee___