# No. 11-57137

IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**OMEGA S.A.,**
*Plaintiff—Appellant,*

*v.*

**COSTCO WHOLESALE CORPORATION,**
*Defendant—Appellee.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
TERRY J. HATTER, JR., DISTRICT JUDGE • CASE NO. 2:04-CV-05443-TJH (RCX)

---

# APPELLANT'S REPLY BRIEF

---

| | |
|---|---|
| **HORVITZ & LEVY LLP** | **COLLEN IP** |
| BARRY R. LEVY | JESS M. COLLEN |
| JOHN A. TAYLOR, JR. | THOMAS P. GULICK |
| FELIX SHAFIR | THE HOLYOKE-MANHATTAN BUILDING |
| 15760 VENTURA BOULEVARD, 18TH FLOOR | 80 SOUTH HIGHLAND AVENUE |
| ENCINO, CALIFORNIA 91436-3000 | TOWN OF OSSINING |
| (818) 995-0800 • FAX: (818) 995-3157 | WESTCHESTER COUNTY, NEW YORK 10562 |
| | (914) 941-5668 • FAX: (914) 941-6091 |

ATTORNEYS FOR PLAINTIFF—APPELLANT
**OMEGA S.A.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES....................................................................iii

INTRODUCTION.........................................................................1

ARGUMENT ...........................................................................3

I.  SUMMARY JUDGMENT IN COSTCO'S FAVOR SHOULD BE REVERSED BECAUSE, AS A MATTER OF LAW, OMEGA DID NOT MISUSE ITS COPYRIGHT IN THE OMEGA GLOBE DESIGN...................................................................3

    A.  Costco and the amici misapply the standard for copyright misuse, which operates to prevent copyright holders from leveraging the limited monopoly conferred by their copyright to control areas outside that monopoly. ................3

    B.  This Court's leveraging standard cannot be met here. ..........6

        1.  Omega merely exercised the exclusive rights granted by copyright law to control distribution of the Omega Globe Design.................................6

        2.  Costco's contention that Omega controls the distribution of watches rather than the distribution of its Omega Globe Design is based on a misinterpretation of copyright law. ..............................7

        3.  Omega neither stifles competition nor revolutionizes copyright law. ......................................16

    C.  Even under the ill-defined public policy standard proposed by Costco and the amici, no copyright misuse occurred because, in using the Omega Globe Design, Omega promoted creativity.................................20

    D.  Costco's and the amici's remaining arguments about publicity and perceptibility are legally irrelevant. ..............25

i

E.    Copyright misuse cannot be based on the copyright holder's subjective intent and, in any event, Costco has not shown Omega's intent here justifies a finding of misuse.................................................................. 29

II.   COSTCO'S ARGUMENTS BASED ON THE DIGITAL MILLENNIUM COPYRIGHT ACT AND TRADEMARK LAW LACK MERIT................................................................ 34

III.  THIS COURT SHOULD DECLINE TO CONSIDER THE FAIR USE ARGUMENTS IN THE AMICUS BRIEF, WHICH COSTCO NEITHER RAISED BELOW NOR ON APPEAL.......... 40

IV.   THE DISTRICT COURT ERRED IN DENYING PARTIAL SUMMARY JUDGMENT IN OMEGA'S FAVOR ON COSTCO'S MISUSE DEFENSES. ................................. 42

CONCLUSION ................................................................ 42

CERTIFICATION OF COMPLIANCE WITH TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ................ 43

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...................................... 6, 16, 17, 22, 27

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
166 F.3d 772 (5th Cir. 1999) ............................................................ 31

*Apple Computer, Inc. v. Franklin Computer Corp.*,
714 F.2d 1240 (3d Cir. 1983) ...................................................... 14, 15

*Apple Inc. v. Psystar Corp.*,
658 F.3d 1150 (9th Cir. 2011) ......................................... 3, 4, 5, 17, 31

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
350 F.3d 640 (7th Cir. 2003) ............................................................ 31

*Bleistein v. Donaldson Lithographing Co.*,
188 U.S. 239 (1903) ......................................................................... 21

*BMG Music v. Perez*,
952 F.2d 318 (9th Cir. 1991) ............................................................ 13

*BV Eng'g v. Univ. of Cal., L.A.*,
858 F.2d 1394 (9th Cir. 1988) ............................................................ 9

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
381 F.3d 1178 (Fed. Cir. 2004) ....................................................... 34

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ........................................................................... 36

*Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*,
84 F.3d 1143 (9th Cir. 1996) ............................................................ 19

*Eldred v. Ashcroft*,
537 U.S. 186 (2003) .................................................................... 21, 25

*Euro Excellence Inc. v. Kraft Canada Inc.*,
[2007] 3 S.C.R. 20 (Can.) ........................................................... 28, 29

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)............................................................. 20, 21, 22

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)................................................................... 24, 32

*Golan v. Holder*,
132 S. Ct. 873 (2012)................................................................. 20, 32

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)................................................................... 10, 41

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997)....................................................... 8, 13

*In re Adbox, Inc.*,
488 F.3d 836 (9th Cir. 2007)............................................................ 41

*Jada Toys, Inc. v. Mattel, Inc.*,
518 F.3d 628 (9th Cir. 2007)........................................................... 36

*Lasercomb America, Inc. v. Reynolds*,
911 F.2d 970 (4th Cir. 1990)........................................................ 4, 5

*Latimer v. Roaring Toyz, Inc.*,
601 F.3d 1224 (11th Cir. 2010)............................................... 24, 30, 41

*Laws v. Sony Music Entm't, Inc.*,
448 F.3d 1134 (9th Cir. 2006)......................................................... 25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004)........................................................... 35

*London-Sire Records, Inc. v. Doe*,
542 F. Supp. 2d 153 (D. Mass. 2008).......................................... 11, 15

*M. Kramer Mfg. Co. v. Andrews*,
783 F.2d 421 (4th Cir. 1986)........................................................... 15

*Mazer v. Stein*,
    347 U.S. 201 (1954) ........................................................ 8, 9, 18, 33, 36

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010), *amended by* 2011 WL
    538748 (9th Cir. 2011) ................................................................ 16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    454 F. Supp. 2d 966 (C.D. Cal. 2006) ................................................ 17

*Mitchell Bros. Film Grp. v. Cinema Adult Theater*,
    604 F.2d 852 (5th Cir. 1979)................................................... 21, 31, 32

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164, 2012 WL 3290014 (9th Cir. 2012) ............................ 41

*Omega S.A. v. Costco Wholesale Corp.*,
    541 F.3d 982 (9th Cir. 2008)................................................... 18, 38, 39

*Parfums Givenchy, Inc. v. Drug Emporium, Inc.*,
    38 F.3d 477 (9th Cir. 1994)........................................ 19, 27, 30, 36, 39

*Patton v. United States*,
    281 U.S. 276 (1930).............................................................................5

*Practice Management Information Corp. v. American
    Medical Ass'n*,
    121 F.3d 516 (9th Cir. 1997), *amended by* 133 F.3d 1140
    (9th Cir. 1998)....................................................................................4

*Quality King Distribs., Inc. v. L'anza Research Int'l*,
    523 U.S. 135 (1998)............................................................. 14, 18, 33

*Red Baron-Franklin Park v. Taito Corp.*,
    883 F.2d 275 (4th Cir. 1989).............................................................27

*Rescuecom Corp. v. Google, Inc.*,
    562 F.3d 123 (2d Cir. 2009) .............................................................39

*Rosenthal v. Stein*,
    205 F.2d 633 (9th Cir. 1953)...................................................... 10, 15

v

*Russian River Watershed Prot. Comm. v. City of Santa Rosa,*
  142 F.3d 1136 (9th Cir. 1998).............................................................. 40

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984)............................................................................. 39

*Stein v. Mazer,*
  204 F.2d 472 (4th Cir. 1953)............................................................... 33

*Swatch S.A. v. New City, Inc.,*
  454 F. Supp. 2d 1245 (S.D. Fla. 2006)......................................... 19, 39

*Triad Sys. Corp. v. Se. Express Co.,*
  64 F.3d 1330 (9th Cir. 1995)............................................................... 17

*United States v. Gementera,*
  379 F.3d 596 (9th Cir. 2004)............................................................... 41

*Universal City Studios v. Reimerdes,*
  111 F. Supp. 2d 294 (S.D.N.Y. 2000)................................................ 34

*Walker v. Univ. Books, Inc.,*
  602 F.2d 859 (9th Cir. 1979)............................................................... 11

*Williams v. Florida,*
  399 U.S. 78 (1970)................................................................................. 5

*Williams Elecs., Inc. v. Artic Int'l, Inc.,*
  685 F.2d 870 (3d Cir. 1982) ......................................................... 14, 15

**Statutes**

17 U.S.C.

§ 101 (Supp. IV 2011)................................................... 11, 25, 26

§ 102(a) (2006)........................................................... 21, 26, 32

§ 106 (2006) ...................................................................... 22

§ 106(1) (2006) .................................................................. 7, 9

§ 106(3) (2006) ........................................... 7, 9, 11, 12, 26, 32

§ 113(a) (2006) ............................................................ 7, 9, 22

§ 113(c) (2006) ................................................................... 13

§ 302(a) (2006).................................................................... 25

§ 602 (2006) ...................................................................... 31

§ 602(a)(1) (Supp. IV 2011) ........................................ 8, 22, 32

§ 1201 et seq. (2006)............................................................ 34

**Regulations**

37 C.F.R.

§ 202.10(b) (2011)............................................................... 36

§ 202.21(c) (2011) .............................................................. 26

**Rules**

Federal Rule of Appellate Procedure 32(a) ........................... 43

**Miscellaneous**

H.R. Rep. No. 94-1476 (1976), *reprinted in*

1976 U.S.C.C.A.N. 5659.................................................... 12

1976 U.S.C.C.A.N. 5665................................................ 13, 27

1976 U.S.C.C.A.N. 5666................................................ 12, 14

1976 U.S.C.C.A.N. 5675-76 ................................................ 12

1 Melville B. Nimmer & David Nimmer, Nimmer on
Copyright § 103[B] (2012) ................................................ 21

2 Melville B. Nimmer & David Nimmer, Nimmer on
Copyright

§ 8.11[E][4] (2012)............................................................ 19

§ 8.12[A] (2012) ................................................................ 10

4 Melville B. Nimmer & David Nimmer, Nimmer on
    Copyright § 14.07[A][3][d] (2012) ....................................................... 36

4 William F. Patry, Patry on Copyright § 13:9 (2012) ............................ 12

# INTRODUCTION

A copyright holder cannot misuse a copyright merely by exercising the exclusive reproduction and distribution rights conferred by that copyright, as Omega did here by controlling the distribution of the Omega Globe Design as engraved on its watches. The district court's determination that Omega misused its copyright in the Omega Globe Design is therefore wrong as a matter of law.

Costco's argument—that copyright holders cannot control the distribution of copyrighted works that are lawfully reproduced on useful objects—is based on a fundamental misunderstanding of copyright law. Regardless whether the distribution right is construed in isolation, as Costco urges, or together with the right of reproduction as two integral parts of the statutory scheme, as required under the ordinary rules of statutory interpretation, the Copyright Act grants copyright holders the right to control the distribution of copyrighted designs affixed on useful objects.

Unable to find support for its argument in the statutory scheme, Costco retreats to a "public policy" argument, contending that Omega misused its valid copyright by supposedly failing to use it in a manner that

sufficiently promotes creativity. But neither this Court nor any other circuit has adopted such an ill-defined test for determining misuse. Indeed, not even the district court adopted Costco's public policy rationale. Instead, this Court and the courts in every other case cited by Costco to support its misuse claim have consistently used the same test to determine whether misuse occurred: whether the copyright holder leveraged the limited monopoly conferred by its copyright to control areas outside that monopoly. That standard cannot be satisfied here because Omega did no more than exercise the rights granted by its limited copyright monopoly.

At bottom, Costco's public policy argument is merely a subterfuge for an attack on the validity of Omega's copyright in its Omega Globe Design. Costco has never disputed that the design meets the minimal creativity requirement for a valid copyright. Because a direct attack on the validity of Omega's copyright would be futile, Costco's misuse defense is a guise to prevent Omega from exercising one of the rights squarely granted by Congress under the Copyright Act based on Omega's valid copyright. Costco's misuse defense, which does not meet this Court's criteria for its application here, should have been rejected by the district court.

# ARGUMENT

## I. SUMMARY JUDGMENT IN COSTCO'S FAVOR SHOULD BE REVERSED BECAUSE, AS A MATTER OF LAW, OMEGA DID NOT MISUSE ITS COPYRIGHT IN THE OMEGA GLOBE DESIGN.

### A. Costco and the amici misapply the standard for copyright misuse, which operates to prevent copyright holders from leveraging the limited monopoly conferred by their copyright to control areas outside that monopoly.

The copyright misuse doctrine is applied "sparingly" and its purpose is to "prevent[] holders of copyrights 'from leveraging their limited monopoly to allow them control of areas outside the monopoly.'" *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011). This Court has consistently found no misuse where a copyright holder did not violate this leveraging standard. (Blue 17-19.)

Costco and the amici curiae instead urge this Court to determine misuse based on whether the copyright holder used its copyright in a manner purportedly violating the public policy underlying the grant of a copyright. (Red 10, 14-17, 19-21, 26; Green 2.) But the standard for misuse does not turn on any such nebulous assessment of public policy. Indeed, the district court correctly relied on (but misapplied) the

3

leveraging standard—not a public policy test untethered to leveraging—to assess Omega's use of its copyright. (1 ER 3.)

According to Costco and the amici, *Practice Management Information Corp. v. American Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997), *amended by* 133 F.3d 1140 (9th Cir. 1998), endorsed their public policy standard. (Red 11, 19; Green 2.) But *Practice Management* is consistent with this Court's leveraging standard. That decision—"the only case" in which this Court has ever found copyright misuse—held misuse occurred because the copyright holder improperly sought to leverage its copyright in a coding system "to prevent the use of all competitor's products." *Apple Inc.*, 658 F.3d at 1157-58.[1]

Costco emphasizes that *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990), references public policy and that courts have quoted those references. (Red 10, 16, 19.) But *Lasercomb* merely concluded that the public policy underpinning the grant of a copyright warrants judicial recognition of a copyright misuse defense, and that by

---

[1] The out-of-circuit cases Costco cites as support for a public policy standard are inapposite for the same reason: they all assessed whether misuse occurred based on whether the copyright holder leveraged the limited monopoly conferred by its copyright to control areas outside that monopoly. (*See* Red 16, 19-22; Blue 19-20.)

employing a misuse defense, courts are effectuating that public policy. *Lasercomb Am., Inc.*, 911 F.2d at 977. That does not mean courts gauge whether misuse occurred based on the vagaries of any public policy that a copyright infringer can dream up. To the contrary, this Court and the out-of-circuit cases on which Costco relies (including *Lasercomb*) have consistently applied the leveraging standard as the specific and proper test for assessing whether a misuse in violation of public policy has occurred. (Blue 17-20.) *Accord Apple Inc.*, 658 F.3d at 1157 (explaining that the Court has "described the purpose of the defense as preventing holders of copyrights 'from leveraging their limited monopoly to allow them control of areas outside the monopoly.'")

Costco nonetheless insists this Court should apply a different public policy standard divorced from leveraging because misuse is an evolving doctrine that must be flexible enough to "deal with new factual situations." (Red 17-18.) But "public policy embodies a doctrine of vague and variable quality" and generally "should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection." *Patton v. United States*, 281 U.S. 276, 306 (1930), *abrogated on another ground by Williams v. Florida*, 399 U.S. 78, 91-103 (1970). Costco's argument

contravenes that rule, providing no sound justification for replacing this Court's leveraging standard with its own ill-defined public policy test.

**B.     This Court's leveraging standard cannot be met here.**

### 1.     Omega merely exercised the exclusive rights granted by copyright law to control distribution of the Omega Globe Design.

"The defense of copyright misuse forbids a copyright holder from 'secur[ing] an exclusive right or limited monopoly not granted by the Copyright Office.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001). Accordingly, as this Court and other courts have consistently concluded (Blue 30, 33-34), a copyright holder who does no more than exercise the rights to control reproduction and distribution conferred by its copyright has not committed misuse. *A&M Records, Inc.*, 239 F.3d at 1026-27. Omega did not misuse its valid copyright in the Omega Globe Design because Omega did no more than exercise one of the exclusive rights granted by its copyright—i.e., the right to control the distribution of the Omega Globe Design engraved on Seamaster watches. (Blue 22-31, 33-34.)

> **2.** **Costco's contention that Omega controls the distribution of watches rather than the distribution of its Omega Globe Design is based on a misinterpretation of copyright law.**

Costco argues that Omega has misused its copyright in the Omega Globe Design because it controls the distribution of physical objects (watches) rather than the distribution of the copyrighted design. (*E.g.*, Red 22-23, 29-32, 36-41, 43-44.) But this argument is based on a fundamental misinterpretation of the rights conferred by the Copyright Act.

***Costco misinterprets the Copyright Act by failing to construe the rights of distribution and reproduction together as integral parts of the statutory scheme***: Section 106(1) of the Copyright Act grants a copyright holder the exclusive right "to reproduce the copyrighted work in copies or phonorecords." 17 U.S.C. § 106(1) (2006). Pursuant to section 113, this "exclusive right to reproduce a copyrighted pictorial, graphic, or sculptural work in copies under section 106 includes the right to reproduce the work *in or on any kind of article*, whether useful or otherwise." *Id.* § 113(a) (emphasis added). Section 106 also confers the exclusive right to then "distribute copies or phonorecords of the copyrighted work to the public by sale," *id.* § 106(3), including the right to

7

control importation into the United States, 17 U.S.C. § 602(a)(1) (Supp. IV 2011). The right to control distribution includes "'the right to exclude others from using'" a copyright. *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1215 (9th Cir. 1997).

In short, these statutory provisions grant a copyright holder the right to reproduce a copyrighted pictorial, graphic, or sculptural work (like the Omega Globe Design) on a useful article (like a Seamaster watch) and to then control the distribution of the copyrighted design as incorporated into the useful article. As the Supreme Court has recognized, a copyright holder can exercise the rights conferred by copyright law to prevent others from infringing a copyrighted work that has been incorporated into a manufactured "industrial article." *Mazer v. Stein*, 347 U.S. 201, 218-19 (1954). The modern Copyright Act was enacted after *Mazer* and adopts *Mazer*. (Blue 24.)[2]

---

[2] *Mazer* was not limited to the issue of whether a statuette incorporated into a useful object could be copyrighted, as Costco contends. (Red 36.) The Supreme Court recognized that it cannot be "misuse of the copyright" to copyright artistic work, incorporate the work as an element of a manufactured "industrial article," and then exercise the rights granted by its copyright to "prevent" others from "us[ing]" copies of their statuettes "as such *or as incorporated in some other article*." *Mazer*, 347 U.S. at 217-19 (emphasis added). Accordingly, the Court permitted plaintiffs to

(continued...)

8

Rather than disputing that sections 106(1) and 113(a) grant a right to reproduce copyrighted works on useful objects, Costco instead insists this reproduction right must be read in isolation from the distribution right granted by section 106(3). (Red 22-23, 29-32, 36-41.) Costco thus argues that Omega's exercise of control over the distribution of the Omega Globe Design (as it is incorporated into Omega watches) is an abusive "'entangling'" of the design and useful object amounting to unauthorized control over the distribution of the watches. (Red 22, 36-41.)

But "[i]t is well settled that in interpreting a statute we must consider each provision in the context of the statute as a whole.'" *BV Eng'g v. Univ. of Cal., L.A.*, 858 F.2d 1394, 1398 (9th Cir. 1988) (construing Copyright Act). By interpreting the distribution right granted by section 106(3) in isolation from the reproduction right granted by sections 106(1) and 113(a), Costco violates this fundamental rule of statutory interpretation.

Properly construed together, the distribution right *must* include the right to control the distribution of copies of copyrighted artwork as

---

(...continued)
proceed with their infringement action against defendants for selling lamps incorporating plaintiffs' copyrighted statuettes. *Id.* at 202-04, 219.

reproduced on useful objects. Otherwise, the copyright protection afforded by the right to control the distribution of copyrighted artwork would dissipate the moment a copyright holder reproduced the artwork on a manufactured useful product, contrary to law. *See Rosenthal v. Stein*, 205 F.2d 633, 636-37 (9th Cir. 1953) ("'[Copyright] [p]rotection is not dissipated by taking an unadulterated object of art as copyrighted and integrating it into commercially valuable merchandise.'"); 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.12[A] (2012) ("granting the distribution right is a necessary supplement to the reproduction right in order fully to protect the copyright owner").

*Costco's misinterpretation of the right to control distribution would render that statutory right meaningless*: Even if this Court were to construe the distribution right in isolation, as Costco urges, section 106(3) would still grant copyright holders the right to control the distribution of copyrighted works incorporated into useful objects.

As Costco acknowledges, the right to control distribution is the right to control publication. (Red 31-32.) *See also Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 552 (1985). The Copyright Act defines "'[p]ublication'" as "the distribution of copies or phonorecords of a work to

10

the public by sale or other transfer of ownership, or by rental, lease, or lending" or as "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution . . . ." 17 U.S.C. § 101 (Supp. IV 2011). And the Act defines the "'[c]opies'" that must be distributed to implement publication as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *Id.*

In short, distribution requires "the distribution of *copies*," *id.* (emphasis added) (defining "'[p]ublication'"); *accord id.* § 106(3) (granting right "to distribute copies"), and "[a] copy must of necessity consist of some tangible material object upon which the work is 'fixed.'" *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 863 (9th Cir. 1979). Thus, "Congress intended for the copyright owner to be able to control the public distribution *of items that can reproduce*" the copyrighted work. *London-Sire Records, Inc. v. Doe*, 542 F. Supp. 2d 153, 170 (D. Mass. 2008) (emphasis added); *see also id.* at 173-74 (distribution right "addresses concerns for the market for *copies*" of "the copyrighted work" and "[w]hat matters in the marketplace"

11

is whether the distributee receives "a material object" (emphasis added));
H.R. Rep. No. 94-1476, at 53, 62 (1976), *reprinted in* 1976 U.S.C.C.A.N.
5659, 5666, 5675-76 (under Copyright Act, "'copies' . . . will comprise all of
the material objects in which copyrightable works are capable of being
fixed" and section 106(3)'s right of publication grants "the right to control
the first public distribution of an authorized copy" of copyright owner's
"work"); 4 William F. Patry, Patry on Copyright § 13:9 (2012) ("The right
[to control distribution] granted [by section 106(3)] is one to distribute
*copies* of the [copyrighted] work to the public 'by sale or other transfer of
ownership, or by rental lease, or lending.'  The right is thus one to
distribute *material embodiments of a work*, and not a right to distribute
the intangible work itself." (second emphasis added)).

Accordingly, the exclusive right to control distribution confers on
Omega the right to control the distribution of copyrighted works (like the
Omega Globe Design) as they are affixed to the material objects (like
Omega's watches) that are necessary for distribution.

Costco nonetheless argues that a copyright holder cannot control the
distribution of a copyrighted design once it is affixed to a physical object.
(Red 29-32.)  But Costco's interpretation of the right to distribution would

render the Copyright Act's definitions for "'[p]ublication'" and "'[c]opies'" meaningless by stripping copyright holders of their right to control the specific method of distribution—publication through material objects— expressly *mandated* by the Act. Such a statutory interpretation is foreclosed by the law. *See BMG Music v. Perez*, 952 F.2d 318, 319-20 (9th Cir. 1991) (refusing to construe Copyright Act in manner that would render right to control importation "'virtually meaningless'").[3]

Furthermore, the Copyright Act "grants to the copyright owner the exclusive right to distribute the protected work," *Image Technical Servs., Inc.*, 125 F.3d at 1215, and "it makes no difference what the form, manner, or medium of fixation may be—whether it is words, numbers, notes, sounds, pictures, or any other graphic or symbolic indicia, *whether embodied in a physical object in written, printed, photographic, sculptural, punched, magnetic, or any other stable form . . .*," H.R. Rep. No. 94-1476, at

---

[3] Additionally, section 113(c) of the Act provides that, where a copyrighted work has been reproduced in a useful article offered for sale to the public, the copyright holder's right to control distribution does not include the right to prevent the distribution of pictures or photographs of the article under certain circumstances. 17 U.S.C. § 113(c). This exception to the distribution right would likewise be rendered superfluous if, as Costco contends, a copyright holder could *never* control the distribution of the useful article on which the copyrighted work had been reproduced.

52, *reprinted in* 1976 U.S.C.C.A.N. at 5665 (emphasis added). "[T]he medium is not the message" and the fact the copyrighted work has been incorporated into a utilitarian object does not mean the copyright holder is controlling the physical medium itself rather than the copyright. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1249, 1251 (3d Cir. 1983); *see also Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 874-78 (3d Cir. 1982).

Copyright law's application to books underscores Costco's misinterpretation of the law. A book is merely a material utilitarian object consisting of bound paper, and under the Copyright Act, "is not a work of authorship" eligible for copyright protection "but is a particular kind of 'copy.'" H.R. Rep. No. 94-1476, at 53, *reprinted in* 1976 U.S.C.C.A.N at 5666. Thus, a copyrightable literary work "must merge through fixation" into a "tangible object" like a book to be covered by the Copyright Act. *Id.* If Costco's position were correct, the absurd result would be that the copyright holder for a literary work affixed in a book would be deprived of control over the book's distribution. *See Quality King Distribs., Inc. v. L'anza Research Int'l*, 523 U.S. 135, 140, 147-48 (1998) (discussing

copyright holders' right to control distribution and importation of books—i.e., "copies"—incorporating copyrighted work).

Costco's argument also assumes that the material objects—"copies"—to which copyrighted works must be affixed for distribution cannot include *utilitarian* goods. But "*any* object in which" a copyrighted work "can be fixed is a 'material object.'" *London-Sire Records, Inc.*, 542 F. Supp. 2d at 171 (emphasis added). The Copyright Act's "broad language" for the definition of a "'copy'" shows "Congress opted for an expansive interpretation" of that term and thus copyrighted works can be affixed to material utilitarian goods. *Williams Elecs., Inc.*, 685 F.2d at 874-77 (copyrighted work could be affixed to electronic memory devices even though they were utilitarian objects); *accord M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 440-42 (4th Cir. 1986) (same); *Apple Computer, Inc.*, 714 F.2d at 1249 (same); *Rosenthal*, 205 F.2d at 637 ("'[copyright] [p]rotection is not dissipated by taking an unadulterated object of art as copyrighted and integrating it into commercially valuable merchandise'").

In sum, Costco cites no authority permitting a court, in the guise of the misuse defense, to strip copyright holders of their control over distribution simply because they, in compliance with Congress's broad

authorization permitting copyright holders to affix their copyrighted work to *any* material medium, chose to affix their copyrighted designs to utilitarian products as a method for distributing their design. *See A&M Records, Inc.*, 239 F.3d at 1027 (medium on which the copyright is distributed has no bearing on copyright misuse).

### 3. Omega neither stifles competition nor revolutionizes copyright law.

Costco asserts competition would be stifled and copyright law revolutionized if the Copyright Act permitted Omega to control the distribution of Omega watches engraved with the Omega Globe. (Red 12-13, 35-36.) But such policy considerations "cannot trump the statute's plain text and structure." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 951 (9th Cir. 2010), *amended by* 2011 WL 538748 (9th Cir. 2011). In any event, these arguments are without merit.

***Omega does not stifle competition*:** Costco never disputes that Omega's control of the Omega Globe Design under the Copyright Act does not prevent Costco or anyone else from: (1) selling watches that do not bear the Omega Globe Design, including Omega watches not engraved with the design; (2) making and selling their own line of watches,

16

including watches engraved with anyone else's artistic designs; or (3) even selling watches bearing the Omega Globe Design following a "first sale" in the United States. That Omega does not prevent anyone, much less Costco, from making or selling competing products or designs shows Omega did not commit misuse. *Apple Inc.*, 658 F.3d at 1153, 1155; *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1333-34, 1337 (9th Cir. 1995), *superseded in part by statute on another ground as stated in Apple Inc.*, 658 F.3d at 1158-59.

The *only* work whose distribution Omega controls under the Copyright Act is the Omega Globe Design as engraved on Omega watches. (*E.g.*, 2 ER 72-73 (operative complaint).) Omega's exercise of its distribution right cannot constitute misuse. *A&M Records, Inc.*, 239 F.3d at 1026-27; *accord Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 997-98 (C.D. Cal. 2006) ("right to exclude is inherent in the grant of a copyright," a copyright is therefore "not improperly expanded simply because the owner has exercised his or her power to exclude," and thus "plaintiff's 'enforcement of its copyrights does not constitute copyright misuse'"). Even then, Omega's distribution right imposes only a minimal restraint because Costco may freely sell watches

17

engraved with the copyrighted design after they are first sold in the United States with Omega's authorization. *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 983 (9th Cir. 2008).

***Omega does not revolutionize the law*:** Far from invoking copyright law in a revolutionary manner, Omega has done no more than control the distribution of copyrighted works incorporated into useful objects in the same fashion as others have done for decades with court approval. (Blue 25-27.)

For example, the Supreme Court long ago said copyright holders could prevent others from infringing copyrighted statuettes as they are incorporated into lamps. *Mazer*, 347 U.S. at 218-19. Decades later, when a copyright holder sued a defendant who sold hair care products bearing its copyrighted labels for violating the Copyright Act provisions granting the exclusive right to control distribution and importation, the Supreme Court said these provisions "applied equally" regardless of whether the copyright consisted of a label affixed to hair care products or to "more familiar copyrighted materials such as sound recordings and books." *Quality King Distribs., Inc.*, 523 U.S. at 138, 140. And nearly two decades ago, this Court affirmed a judgment of copyright infringement where the

defendant imported and distributed perfume boxes bearing copyrighted designs without the copyright owner's authorization. *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 479-85 (9th Cir. 1994); *see also, e.g.*, *Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1146, 1148-49 (9th Cir. 1996) (acknowledging that, absent a first sale, defendant's unauthorized sale of diapers in boxes incorporating a copyrighted design would violate right of distribution); *Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1253 (S.D. Fla. 2006) (granting summary judgment for copyright holder on copyright infringement claim where defendant imported and distributed watches bearing a copyrighted design without authorization).

In short, the Copyright Act bars unauthorized distribution (including the importation) of "a great number of manufactured goods" that "incorporate a label, a design, instruction sheets, or other material that is subject to copyright protection." 2 Nimmer & Nimmer, *supra*, § 8.11[E][4]. Costco tries to sweep these decisions aside, arguing that they addressed issues other than copyright misuse and thus provide no guidance here. (Red 30-31 n.10, 36-37, 39-40.) Costco misses the point. These cases belie Costco's assertion that Omega uses its copyright in a revolutionary fashion

19

by confirming that copyright holders have, with court approval, long controlled the distribution and importation of their copyrighted works incorporated into useful consumer goods.

**C. Even under the ill-defined public policy standard proposed by Costco and the amici, no copyright misuse occurred because, in using the Omega Globe Design, Omega promoted creativity.**

Costco contends Omega violated public policy and thus committed copyright misuse by using its valid copyright in the Omega Globe Design in a manner that fails to promote creativity. (*E.g.*, Red 11, 14-20, 26-29, 32.) This argument is without merit for several reasons.

***Omega need not use the Omega Globe Design in a manner that promotes creativity*:** Costco's argument is based on the false premise that Omega may lawfully exercise the rights conferred by its copyright only if it does so in a fashion that promotes creativity.

The Constitution's Copyright and Patent Clause empowers Congress "to 'promote the Progress of Science and useful Arts' by enacting systems of copyright and patent protection." *Golan v. Holder*, 132 S. Ct. 873, 887-88 (2012). Thus, "[t]o qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S.

340, 345 (1991). To satisfy this originality requirement, a work must possess a "minimal degree of creativity." *Id.*

But "'[t]he words of the copyright clause of the constitution do not require that *Writings* shall promote science or the useful arts; they require that *Congress* shall promote those ends.'" *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 859-60 (5th Cir. 1979); 1 Nimmer & Nimmer, *supra*, § 1.03[B]. "[I]t is obvious that although Congress could require that each copyrighted work be shown to promote useful arts (as it has with patents), it need not do so," *Mitchell Bros. Film Grp.*, 604 F.2d at 860 (footnote omitted), and Congress has chosen instead to extend copyright protection to all original works of authorship without conditioning the copyright on the perpetual promotion of the useful arts and sciences, *id.* at 854, 858-60; 17 U.S.C. § 102(a); *see also Eldred v. Ashcroft*, 537 U.S. 186, 210-11 (2003) (rejecting argument that copyright protection cannot be extended to works that were sufficiently original to qualify for protection but, once distributed, were no longer original); *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251-52 (1903) ("It would be a dangerous undertaking for persons trained only to the law to

constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits.").

"[T]he requisite level of creativity is extremely low; even a slight amount will suffice" and the "vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it may be." *Feist Publ'ns, Inc.*, 499 U.S. at 345. If a work possesses this necessary spark of originality to qualify for copyright protection, the copyright holder need not exercise the rights conferred by the valid copyright in a manner that promotes creativity. *See* 17 U.S.C. §§ 106, 113(a), 602(a)(1) (granting exclusive rights without conditioning the exercise of those rights on promotion of creativity). Once a copyright holder has been granted exclusive rights by a copyright, the holder does not misuse its copyright by exercising those rights. *A&M Records, Inc.*, 239 F.3d at 1026-27.

Costco's contention that misuse occurs if a copyright is not used in a fashion to promote creativity conflates misuse with whether a copyright is valid. The Constitution's Copyright Clause already fully protects creativity by making creative expression a prerequisite for copyright protection. *Feist Publ'ns, Inc.*, 499 U.S. at 345-46. Copyright infringers

could easily evade the high bar for challenging a copyright's validity based on insufficient creativity if the same creativity challenge could be passed off as "misuse" under Costco's nebulous public policy standard.

And that is exactly what is happening here. The Omega Globe Design's artistic depiction readily satisfies the minimal creativity standard for copyright protection. (*See* 2 ER 40.) And even though Costco does not dispute that Omega's copyright in the Omega Globe Design is valid (2 ER 308; Red 13, 37), Costco nonetheless insists that Omega can somehow misuse that copyright if it uses the design in a fashion that fails to promote creativity (*see*, *e.g.*, Red 11, 14-20, 26-29). Costco's misuse argument is a transparent end run around the hurdles for challenging a copyright's validity based on lack of creativity. Costco elected not to challenge the copyright's validity (2 ER 308; Red 13, 37), and cannot now be permitted to pass off its complaints about copyright validity under the label "misuse" by claiming that Omega somehow fails to promote creativity in using its copyright.

***Omega's use of its Omega Globe Design promotes creativity***: Even assuming Omega must use the Omega Globe Design in a fashion

23

that promotes creativity to avoid misuse, Costco cannot show Omega fails to promote creativity.

"[C]opyright law ultimately serves the purpose of enriching the general public through *access* to creative works." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) (emphasis added). As noted, Costco does not dispute the Omega Globe Design possesses the creativity necessary to qualify for copyright protection. (*Supra*, 23.) Every time Omega engraves its creative design on a watch offered for sale to the public, the creative artwork becomes more accessible to the public and creativity is promoted. *See*, *e.g.*, *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1234 (11th Cir. 2010) (recognizing that customization of useful object with artwork involves "original, creative expression").

Finally, to the extent Costco suggests creativity can never be promoted through the distribution of material objects affixed with copyrighted designs, Costco's assertion is belied by the Copyright Act. Even assuming distribution of a copyright must promote creativity, as Costco erroneously contends, such promotion *must* occur through the distribution of material objects bearing copyrighted designs, because that is the manner of distribution mandated by copyright law. (*Supra*, 7 -16.)

24

**D.     Costco's and the amici's remaining arguments about publicity and perceptibility are legally irrelevant.**

Costco claims the Omega Globe Design received no publicity and suggests the design engraved on Omega's watches is not perceptible to the naked eye. (Red 12, 14, 27-29, 44; *see also* Green 6, 8, 10.) Costco's arguments are legally irrelevant because a copyright need not be advertised or perceptible to the naked eye to qualify for copyright protection with respect to distribution.

Under the Copyright Act, copyright protection "run[s] from creation," *Eldred*, 537 U.S. at 217; *accord* 17 U.S.C. § 302(a), and such protection endures even if the copyright holder withholds the copyrighted work from the public, *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006). A fortiori, a copyright is no less valid if unaccompanied by an advertising campaign. Nor is publicity a prerequisite for distribution. 17 U.S.C. § 101 (defining "'[p]ublication'" and "'[c]opies'"). Costco never suggests Omega has not satisfied the minimal conditions for distribution, none of which require publicity.

Similarly, although the Omega Globe Design as engraved on Omega's watches is (contrary to Costco's assertion) visible to the naked eye (*see* 2 ER 116, 128; 2 SER 175), it need not be. "Copyright protection subsists . . .

in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived . . . either directly *or with the aid of a machine or device*." 17 U.S.C. § 102(a) (emphasis added). The same holds true for distribution, which likewise does not require the copyright to be affixed to the material object in a manner visible to the naked eye. *Id.* §§ 101, 106(3).[4]

In a variant of its perceptibility argument, Costco contends that the Design was not prominently displayed and was "hidden" from view because it was engraved on the back of Omega's watches. (Red 12, 14, 26-27, 36-37, 44.) Again, this assertion is belied by the record. Omega manufactures luxury watches (Blue 8), Omega has engraved artistic designs on the back of Omega watches for decades (Blue 8-9), and both retailers and purchasers are aware of and like the designs (FER 24, 30).

In a final variant of the perceptibility argument, amici argue that copyright holders cannot be permitted to control the distribution of a

---

[4] Costco falsely insinuates Omega's copyright registration application misrepresented the size of the Design. (Red 7 n.1.) But Omega merely complied with the Copyright Office's requirement that "[a]ll types of identifying material other than photographic transparencies must be *not less than* 3x3 inches and *not more* than 9x12 inches." 37 C.F.R. § 202.21(c) (2011) (emphases added).

copyrighted work affixed to a utilitarian object if this work is "merely incidental to"—rather than a "significant feature of"—the object. (Green 10-14.) This radical argument cannot be squared with the Copyright Act.

Section 106 of the Act grants "broad rights," *Red Baron-Franklin Park v. Taito Corp.*, 883 F.2d 275, 277-78 n.4 (4th Cir. 1989), *superseded by statute on another ground*, *Parfums Givenchy, Inc.*, 38 F.3d at 482 n.9, one of which confers broad authorization on copyright holders to control the distribution of their copyrighted works when these works are affixed to *any* material object, including utilitarian goods (*supra*, 7-16). Congress also used "broad language" to define the wide spectrum of physical media to which copyrighted work must be affixed for a copyright holder to exercise its exclusive rights and did so "to avoid the artificial and largely unjustifiable distinctions" between such media. H.R. Rep. No. 94-1476, at 52, *reprinted in* 1976 U.S.C.C.A.N. at 5665.

Thus, under the Act, the physical object in which a copyrighted work is embodied makes no difference. *Id.*; *accord A&M Records, Inc.*, 239 F.3d at 1026-27 (medium through which copyright holder exercises its distribution right is immaterial to copyright misuse). Amici's incidental copyright test, which would apply solely when a copyrighted work is fixed

27

to a particular physical medium (a "useful article"), would draw the very distinctions the Act sought to avoid.  (Green 10-12.)

Amici do not claim that any of the Act's statutory provisions authorize an "incidental" copyright exception for useful articles bearing copyrighted designs.  Instead, amici base their argument entirely on the codification of such an exception by two foreign nations, and the false assertion that Canada's Supreme Court has endorsed their standard as a judicially-created exception to Canadian copyright law.[5]  (Green 14.)  But amici do not suggest the distribution right conferred by these foreign countries matches the broad distribution right granted by the Copyright Act.  Nor do amici cite any authority permitting American courts, based on the laws of foreign nations, to superimpose on the Copyright Act a judicially-created exception for incidental copyrights affixed to useful articles, thereby restricting the broad right to control distribution granted by the Act.

---

[5]  In fact, in *Euro Excellence Inc. v. Kraft Canada Inc.*, [2007] 3 S.C.R. 20 (Can.), five of the court's nine justices expressly rejected the incidental copyright exception.  *Id.* at ¶¶ 1-13 (Rothstein, J., plurality opinion); *id.* at ¶¶ 107-112 (Abella, J., dissenting).

28

Finally, this Court should reject amici's revolutionary "incidental" copyright standard simply because it would require an impossibly subjective assessment in each case and therefore provides no feasible judicial test. *See Euro Excellence Inc.*, 3 S.C.R. 20 at ¶ 6 (Rothstein, J., plurality opinion) (explaining that there is "little guidance on how to determine whether a work is 'merely incidental'").

**E. Copyright misuse cannot be based on the copyright holder's subjective intent and, in any event, Costco has not shown Omega's intent here justifies a finding of misuse.**

Virtually all of Costco's arguments are based on the assertion that Omega's sole subjective intent for creating the Omega Globe Design and engraving it on Omega's watches was to control the distribution of the watches; according to Costco, this sole motive justifies a finding of copyright misuse. (Red 9-11, 13-16, 20-23, 26-29, 32, 38, 40-44.) This argument is factually and legally without merit.

Factually, the record belies Costco's assertion that controlling distribution of its watches was Omega's sole motive, rather than just one among several motives.

First, the Omega Globe Design was intended to add quality and prestige to Omega's watches. Raynald Aeschlimann (Vice President of

Omega) testified that the Omega Globe Design was created by a famous designer to evoke a sense of excellence and artistic prestige and to convey luxury to consumers. (2 ER 282 (¶ 3), 286; FER 7-12, 17-18.) Robert Emmons, President of the Omega Division of The Swatch Group (U.S.), likewise testified that the design was created to enhance the prestige and distinction of Omega watches. (2 ER 214-15; FER 21-30.) This motive comports with copyright law because customizing useful objects with artwork promotes creative expression worthy of copyright protection. *Latimer*, 601 F.3d at 1234.

Second, Aeschlimann testified that the Omega Globe Design was also created to thwart counterfeiting because the engraving method requires high-quality manufacturing that makes counterfeiting more difficult. (2 ER 208-09, 286; FER 9-10, 13-15.)[6] This anti-counterfeiting motive is consistent with copyright law, which bars pirated copies of copyrighted works. *See*, *e.g.*, *Parfums Givenchy, Inc.*, 38 F.3d at 484 ("The import

---

[6] This anti-counterfeiting motive also explains why Omega did not want to publicize the Omega Globe Design: (1) until it has been engraved on all Omega watches, information about the design could leak and foster counterfeiting; and (2) purchasers of new watches not yet bearing the design would question the quality of their products. (2 ER 286; FER 14-16.)

restrictions of Copyright Act § 602 were intended to protect U.S. copyright holders from pirated articles as well as gray market copies.").

Costco's subjective intent argument is also legally irrelevant. A finding of copyright misuse cannot be based on a court's condemnation of the subjective intent underlying the use of a copyright because misuse turns solely on the copyright holder's objective conduct. (Blue 31-34.)

Costco cites *no* case holding that copyright misuse can be based on subjective intent. (Red 41-44.)[7]  Instead, Costco argues courts must have the authority to find misuse based on subjective motives because misuse is an equitable defense. (Red 42-43.)

But "equitable doctrines should not be applied where their application will defeat the purpose of a statute." *Mitchell Bros. Film Grp.*, 604 F.2d at 861. The Constitution's Copyright Clause "'empowers Congress to determine the intellectual property regimes that, overall, in

---

[7]  Costco suggests that one of this Court's decisions and two out-of-circuit cases permit courts to find misuse based on a copyright holder's subjective "purpose." (Red 20-23.) Those cases did not find misuse based on the copyright holders' subjective motives, but instead examined the *objective* conduct of the holders to assess whether it violated the leveraging standard. *Apple Inc.*, 658 F.3d at 1155, 1157-60; *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 642-43, 646-47 (7th Cir. 2003); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 793-94 (5th Cir. 1999).

that body's judgment, will serve the ends of the Clause.'" *Golan*, 132 S. Ct. at 888. Congress determined these ends are best served by extending copyright protection to all "original works of authorship fixed in any tangible medium . . . from which they can be perceived, reproduced, or otherwise communicated . . . ." 17 U.S.C. § 102(a). And Congress elected to confer on those with valid copyrights the exclusive right to control distribution (and thus importation)—without conditioning this right on any particular motive. *Id.* §§ 106(3), 602(a)(1). Judicially superimposing a "proper motive" requirement on the exercise of this distribution right where Congress authorized no such element would defeat the purpose of these broadly inclusive Copyright Act provisions. *See Mitchell Bros. Film Grp.*, 604 F.2d at 861.

Costco's subjective intent test is unworkable in any event. It is "important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty*, 510 U.S. at 527. But Costco's intent test obfuscates rather than clarifies those boundaries. As this case illustrates, copyright holders often create copyrighted designs and affix them to utilitarian articles for multiple subjective reasons. Under Costco's test, no one could know whether a copyright is lawfully made and used until a court has

peered into the mind of the copyright holder to ascertain its true intentions, figured out which of these motives primarily drove the creation and use of the copyright, and struggled with whether that primary motive was misuse. Mandating a "'Judicial inquiry to plumb the mind of every copyright proprietor and determine his plans and intentions as of the time of registration'" is an "'impossibility . . . not contemplated'" by copyright law. *Stein v. Mazer*, 204 F.2d 472, 479 (4th Cir. 1953).

Finally, the motive Costco cites—creating the Omega Globe and engraving it onto Omega watches to control the distribution of those watches—cannot justify a finding of misuse because copyright law expressly permits a copyright holder to control the distribution of a copyright as it is incorporated into a utilitarian object. (*Supra*, 7-16.) Nothing in copyright law "support[s] the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates" the copyright. *Mazer*, 347 U.S. at 218; *see also Quality King Distribs., Inc.*, 523 U.S. at 140 (explaining that Copyright Act's statutory provisions granting exclusive rights applied even where copyright holder was "primarily interested in protecting the integrity of its method of marketing the [hair care] products to which the [copyrighted] labels are affixed").

## II. COSTCO'S ARGUMENTS BASED ON THE DIGITAL MILLENNIUM COPYRIGHT ACT AND TRADEMARK LAW LACK MERIT.

Finding no support in either the text of the Copyright Act or in public policy, Costco and the amici attempt to justify the district court's misuse finding based on two arguments the court never espoused. Both arguments are meritless.

***The Digital Millennium Copyright Act has no application to Costco's misuse defense***: The Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq. (DMCA), while part of the Copyright Act, was enacted to prevent the circumvention of technical measures that control access to copyrighted works. *See Universal City Studios v. Reimerdes*, 111 F. Supp. 2d 294 (S.D.N.Y. 2000).

Costco and the amici argue that two decisions from other circuits interpreting the DMCA have some relevance to the misuse issue here. (Red 23-25, Green 8-9.) But the two cases involve litigation by manufacturers to prevent the sale of competing products on the ground that the products violated the DMCA's anticircumvention provisions. *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) (involving whether competitor's "universal transmitter" for use with

plaintiff's garage door opener violated the DMCA's anticircumvention provisions); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) (involving whether defendant's microchips, which were used in ink cartridges remanufactured for use in plaintiff's printers, violated the DMCA).

Neither case has any application here because Omega is not attempting to prevent Costco from manufacturing or selling watches that compete with Omega's watches, or from selling any accessory that operates in connection with Omega's watches. Costco's reliance on such a remotely tangential argument as its analogy to the DMCA merely demonstrates the absence of any authority supporting its position.

***Enforcing Costco's copyright interest will not undermine trademark law***: Despite the number of cases recognizing a copyright holder's right to control the distribution of its copyrighted material incorporated into utilitarian products, (*supra*, 18-19), no court has ever suggested, much less held, that enforcement of such a copyright interest threatens to adversely impact trademark law, as Costco and the amici contend. (Red 32-35; Green 6-15.)

As an initial matter, Costco's argument is founded on the false premise that it would be "improper[ ]" to "extend[ ] the Copyright Act beyond its proper bounds into the realm of trademark law." (Red 32.) But there is no prohibition against overlap between different intellectual property rights. *See*, *e.g.*, 37 C.F.R. § 202.10(b) ("[T]he Copyright Office . . . will register a properly filed copyright claim in a print or label that contains the requisite qualifications for copyright even though there is a trademark on it."); *Mazer*, 347 U.S. at 217 (patentability of work does not bar its copyrightability as work of art); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 631, 636 n.6 (9th Cir. 2007) (elements of logo registered for trademark protection were also "protectable for the purposes of a copyright infringement action").

For example, both the Lanham Act (which protects trademarks) and the Copyright Act prevent counterfeiting. *See, e.g.*, 4 Nimmer & Nimmer, *supra*, § 14.07[A][3][d]. Likewise, the regulation of parallel imports or gray market goods is included in both the Lanham Act and Copyright Act. *Parfums Givenchy, Inc.*, 38 F.3d at 481, 484-85 & n.6.

Costco falsely argues that "Omega is guilty of exactly the conduct the [Supreme] Court has warned against" in *Dastar Corp. v. Twentieth*

36

*Century Fox Film Corp.*, 539 U.S. 23 (2003). (Red 33-34.) *Dastar* was not even a copyright case. In *Dastar*, the Supreme Court rejected a former copyright holder's attempt to use trademark law to obtain copyright-like protection (i.e., a "mutant copyright") after it had allowed its copyright interest in a television series to lapse. Here, the validity of Omega's copyright is undisputed (2 ER 308, Red 13), and Omega is merely enforcing one of its rights as a valid copyright holder—the right to control distribution of its copyrighted design as it is incorporated into a useful object. (*Supra*, 6-16.) By contrast, in *Dastar* the plaintiff was effectively trying to enforce an *expired* copyright that had fallen into the public domain.

Echoing Costco's arguments, amici similarly argue that protecting Omega's copyright will somehow "undermine" trademark law. (Green 2-15.) They contend that Omega is attempting "to inject copyright into areas traditionally governed by trademark law." (Green 5.) But as previously explained, there is no prohibition against overlapping protections under the two intellectual property schemes.

Amici next argue that enforcing Omega's copyright would undermine "a public policy to allow resale of trademarked goods once sold—either

37

here or abroad—by the trademark owner or an entity under its common control." (Green 6.) This is so, according to amici, because protecting Omega's copyright interest "would create a massive loophole that would allow all trademark owners to copyright small insignias tacked onto their goods and thereby circumvent trademark law's policy of allowing resale of genuine goods." (Green 12.) But amici acknowledge a manufacturer's "'right . . . to control distribution of its trademarked product'" up through "'the first sale of the product.'" (Green 6.) A copyright owner may similarly control only the first sale of a good incorporating a copyrighted design, not the *resale* of such goods thereafter. *Omega S.A.*, 541 F.3d at 984-85, 990. That is consistent with trademark law, and creates no loophole.

Amici speculate that allowing Omega to control the first sale within the United States of foreign manufactured goods engraved with their copyrighted design would encourage manufacturers to relocate to foreign countries. (Green 13.) But that argument has already been considered and *rejected* by this Court as a rationale for applying the first-sale doctrine to foreign-manufactured goods first sold overseas. *Omega S.A.*, 541 F.3d

at 989-90. This policy argument has no more force in the context of the misuse issue presented here.

At any rate, there is no rationale for requiring operation of the first sale doctrine in the two intellectual property regimes to be applied identically. *See Parfums Givenchy, Inc.*, 38 F.3d at 483 ("Copyright Act has a purpose, scope, and statutory scheme different from either the Tariff or Lanham Trademark Acts"); *Swatch S.A.*, 454 F. Supp. 2d at 1249-51, 1253-55 (Copyright Act's statutory first sale defense to copyright infringement was not satisfied under circumstances where the judicially-created first sale defense to trademark infringement could apply); *cf. Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984) ("The two areas of the law [patent and copyright], naturally, are not identical twins, and we exercise the caution which we have expressed in the past in applying doctrine formulated in one area to the other.").

Indeed, copyright and trademark law are not analogous because trademark law is based on Congress's authority under the Constitution's Commerce Clause, whereas copyright law is based on Congress's distinct authority under the Constitution's Copyright Clause. *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 134-35 (2d Cir. 2009). Besides, it is up to

Congress, not the courts, to determine whether the first sale doctrine should apply identically under both copyright and trademark law.

Finally, amici assert that Costco would "face a hopeless Catch-22" if it must obliterate the copyrighted design from Omega watches to avoid copyright infringement when reselling them, because it would then risk violating trademark law for doing so. (Green 13.) But that is a dilemma of Costco's own making. Costco can avoid this "hopeless" dilemma simply by not reselling Omega watches engraved with the copyrighted design (a) that were obtained from unauthorized distributors and (b) as to which there has not yet been a valid first sale in the United States.

## III. THIS COURT SHOULD DECLINE TO CONSIDER THE FAIR USE ARGUMENTS IN THE AMICUS BRIEF, WHICH COSTCO NEITHER RAISED BELOW NOR ON APPEAL.

The amici press a fair use defense on appeal. (Green 15-29.) But Costco has never raised fair use below or on appeal. "Generally, [this Court] will not consider on appeal an issue raised only by an amicus." *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1141 n.1 (9th Cir. 1998). While this Court has, in rare instances, considered such arguments where they involve "purely legal questions" and the "parties express an intent to adopt the arguments as their own,"

40

*United States v. Gementera*, 379 F.3d 596, 607-08 (9th Cir. 2004), neither element is met here. Costco did not argue fair use and therefore has not endorsed amici's argument. And "[f]air use is a mixed question of law and fact," *Harper & Row, Publishers, Inc.*, 471 U.S. at 560, not a purely legal issue.

Finally, this Court should decline to consider amici's fair use argument because fair use is an "affirmative defense," *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 2012 WL 3290014, at *3 (9th Cir. 2012), which Costco has not pled (2 ER 82-85). The amici should not be permitted to resurrect an affirmative defense that Costco has waived by failing to plead it.[8] *Latimer*, 601 F.3d at 1239-40; *In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007).

---

[8] If this Court considers addressing fair use, Omega requests an opportunity to file a supplemental brief responding to the fair use argument.

## IV. THE DISTRICT COURT ERRED IN DENYING PARTIAL SUMMARY JUDGMENT IN OMEGA'S FAVOR ON COSTCO'S MISUSE DEFENSES.

Costco does not dispute that Omega is entitled to summary judgment on Costco's tenth and eleventh affirmative defenses if the Court agrees Omega committed no misuse.

## CONCLUSION

This Court should reverse the judgment and direct the district court to enter partial summary judgment for Omega on Costco's tenth and eleventh affirmative defenses.

September ___, 2012                 **HORVITZ & LEVY LLP**
                                       BARRY R. LEVY
                                       JOHN A. TAYLOR, JR.
                                       FELIX SHAFIR
                                    **COLLEN IP**
                                       JESS M. COLLEN
                                       THOMAS P. GULICK


                                    By:   s/Barry R. Levy
                                    _____
                                              Barry R. Levy

                                    Attorneys for Plaintiff—Appellant
                                    **Omega S.A.**

42

**Form 8.**     **Certificate of Compliance Pursuant to 9th Circuit Rules 28-4, 29-2(c)(2) and (3), 32-2 or 32-4[1] for Case Number** 11-57137

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (check appropriate option):

☐ This brief complies with the enlargement of brief size permitted by Ninth Circuit Rule 28-4.  The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).  This brief is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief complies with the enlargement of brief size granted by court order dated _____.  The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).  This brief is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☒ This brief is accompanied by a motion for leave to file an oversize brief pursuant to Circuit Rule 32-2 and is 8,339 _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file an oversize brief pursuant to Circuit Rule 29-2(c)(2) or (3) and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.  The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

| Signature of Attorney or Unrepresented Litigant | s/Barry R. Levy |
|---|---|

("s/" plus typed name is acceptable for electronically-filed documents)

| Date | September 12, 2012 |
|---|---|

[1] If filing a brief that falls within the length limitations set forth at Fed. R. App. P. 32(a)(7)(B), use Form 6, Federal Rules of Appellate Procedure.

## CERTIFICATION OF COMPLIANCE WITH
## TYPEFACE REQUIREMENTS
## AND TYPE STYLE REQUIREMENTS
## [FED. R. APP. P. 32(a)(7)(C)]

☐ 1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☐    this brief contains _____ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    ☐    this brief uses monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

☒ 2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒    this brief has been prepared in a proportionally spaced typeface using MS-Word in 14-point Century Schoolbook font type, or

    ☐    this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

September 13, 2012              s/ Barry R. Levy
Date              *ATTORNEY NAME*

43

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Signature: <u>s/ Barry R. Levy</u>