**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OMEGA S.A.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br>*Defendant-Appellee.* | No. 11-57137<br><br>D.C. No.<br>2:04-CV-05443-<br>TJH-RC |

| | |
|---|---|
| OMEGA S.A.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br>*Defendant-Appellee.* | No. 12-56342<br><br>D.C. No.<br>2:04-CV-05443-<br>TJH-RC<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Senior District Judge, Presiding

Argued and Submitted
December 3, 2013—Pasadena, California

Filed January 20, 2015

Before: Dorothy W. Nelson, Kim McLane Wardlaw,
and Johnnie B. Rawlinson, Circuit Judges.

2     OMEGA S.A. V. COSTCO WHOLESALE CORP.

Opinion by Judge Nelson;
Concurrence by Judge Wardlaw

**SUMMARY**[*]

**Copyright**

The panel affirmed the district court's decisions granting summary judgment and attorneys' fees to the defendant in a copyright infringement action.

Omega S.A. sued Costco Wholesale Corp. for copyright infringement based on Costco's importation into the United States of Omega Seamaster luxury watches without Omega's permission. The panel held that under *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013), the first sale doctrine barred Omega's claim because Omega's copyright distribution and importation rights expired after an authorized first sale of the watches in a foreign jurisdiction. The panel also held that the district court did not abuse its discretion in awarding attorneys' fees to Costco.

Concurring in the judgment, Judge Wardlaw wrote that she would affirm based on the defense of copyright misuse, which was the district court's rationale for granting summary judgment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Barry R. Levy (argued), Horvitz & Levy LLP, Encino, California; Jess M. Collen and Thomas P. Gulick, Collen IP, Ossining, New York, for Plaintiff-Appellant.

Bruce P. Keller (argued), Debevoise & Plimpton LLP, Washington, D.C.; Norman H. Levine and Aaron J. Moss, Greenberg Glusker Fields Claman & Machtinger LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

NELSON, Senior Circuit Judge:

This case involves two big commercial players: Costco Wholesale Corporation ("Costco"), a discount warehouse, and Omega S.A. ("Omega"), a global purveyor of luxury watches. Omega appeals the district court's decisions granting summary judgment and attorney's fees to Costco. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.  Background

Omega manufactures luxury watches in Switzerland, which it distributes around the world. One of Omega's high-end watches, the Seamaster, sometimes bears an engraving of the Omega Globe Design ("Omega Globe"). Omega obtained a copyright for the Omega Globe in March 2003. Omega began selling some Seamaster watches with engraved reproductions of the Omega Globe in September 2003.

Omega distributes its watches, including the Seamaster, through authorized distributors and dealers throughout the world, including the United States. In 2003, Costco and Omega discussed the possibility of Costco carrying Omega watches. The parties did not come to an agreement and Costco never became an authorized Omega retailer.

In 2004, Costco purchased 117 Seamaster watches bearing the Omega Globe on the so-called "gray market." *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 984 (9th Cir. 2008) ("*Omega I*"), *abrogated by Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013). First, Omega sold the watches to authorized foreign distributors. *Id.* Next, unidentified third parties purchased the watches and sold them to ENE Limited, a New York company. *Id.* Costco purchased the watches from ENE Limited. *Id.* Costco then sold 43 of those watches to its members in California. Omega undoubtedly authorized the initial sale of the watches but did not approve the importation of the watches into the United States or Costco's later sale of the watches. *Omega I*, 541 F.3d at 984.

Omega sued Costco for copyright infringement, specifically the importation of copyrighted work without the copyright holder's permission, 17 U.S.C. § 602. The district court granted summary judgment to Costco based on the first sale doctrine. *Omega*, 541 F.3d at 984–85 (explaining that the first sale doctrine, codified at 17 U.S.C. § 109(a), means that once a copyright owner consents to the sale of particular copies of work, that same copyright owner cannot later claim infringement for distribution of those copies). We reversed the district court and remanded because our precedent held that the first sale doctrine did not apply to copies of copyrighted works that had been produced abroad. *Id.* at 990

(discussing *BMG Music v. Perez*, 952 F.2d 318 (9th Cir. 1991)). The Supreme Court granted certiorari, and an equally divided Court summarily affirmed. *Costco Wholesale Corp. v. Omega, S.A.*, 562 U.S. 40 (2010) (per curiam).

On remand, the district court again granted summary judgment to Costco, finding that Omega misused its copyright of the Omega Globe to expand its limited monopoly impermissibly. The district court also granted Costco attorney's fees in the amount of $396,844.17. Omega appeals both the district court's copyright misuse judgment and the attorney's fee award.

## II. Standard of Review

We review the district court's grant of summary judgment de novo, and we may affirm on any basis raised below and with support in the record. *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013). We review an award of attorney's fees for abuse of discretion. *Fabbrini v. City of Dunsmuir*, 631 F.3d 1299, 1302 (9th Cir. 2011).

## III.   Discussion

### A.  First Sale Doctrine

While briefing in this matter was pending, the Supreme Court revisited the first sale doctrine in *Kirtsaeng*, 133 S. Ct. at 1355.[1] In that case, the Court considered "whether the

---

[1] The concurrence argues both that copyright misuse is the only issue presented to the court and that we should have ordered the parties to file supplemental briefing on *Kirtsaeng*. The first sale issue is properly before us. First, Costco raised the first sale doctrine based on the intervening

'first sale' doctrine applies to protect a buyer or other lawful owner of a copy (of a copyrighted work) lawfully manufactured abroad." *Id.* In other words, the Court asked whether the purchaser of the copyrighted work can "bring that copy into the United States (and sell it or give it away) without obtaining permission to do so from the copyright owner[.]" *Id.* The Court held that the answer was yes, and, thus, the "'first sale' doctrine applies to copies of a copyrighted work lawfully made abroad." *Id.* at 1355–56.

*Kirtsaeng* explained that copyright distribution and importation rights expire after the first sale, regardless of where the item was manufactured or first sold. 133 S. Ct. at 1355–56. *Kirtsaeng* interpreted 17 U.S.C. § 109(a), the first sale statutory provision, without overruling prior Supreme Court precedent, *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 73 n.8 (1977) (explaining judgment from an equally divided Supreme Court is not precedent), and its holding is therefore fully retroactive and applies here, *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994).

---

decision in *Kirtsaeng* in a filing with the court prior to oral argument. Costco's 28(j) Letter, Case No. 11-57137, Docket No. 42 & Case No. 12-56342, Docket No. 23 ("Costco notifies the court of *Kirtsaeng* because the Supreme Court's ruling overrules this Court's decision in the prior appeal in this case, *Omega S.A. v. Costco Wholesale Corp.*, 451 F.3d 982 (2008), *aff'd by equally divided court*, 561 U.S. __ (2010)."); Omega's Response Letter, Case No. 11-57317, Docket No. 44 & Case No. 12-56342, Docket No. 25 (arguing *Kirtsaeng* does not apply). Moreover, at oral argument, Costco's first argument, made extensively, was that we can and should affirm on *Kirtsaeng*. Case No. 11-57137, Oral Argument at 19:00. Because the parties litigated the first sale issue extensively the first time this case was before us, and because the holding in *Kirtsaeng* is so clear, there was no need for supplemental briefing.

It is clear, then, that Omega has no infringement cause of action against Costco. Omega's only allegation is that Costco violated Omega's copyright-based importation and distribution rights by selling gray market watches without a prior authorized first sale in the United States. Omega concedes that it authorized a first sale of the watches in a foreign jurisdiction. Omega's right to control importation and distribution of its copyrighted Omega Globe expired after that authorized first sale, and Costco's subsequent sale of the watches did not constitute copyright infringement. *Kirtsaeng*, 133 S. Ct. at 1366; 17 U.S.C. § 109(a). Thus, application of the first sale doctrine disposes of Omega's claim, resolves this case in Costco's favor, and conclusively reaffirms that copyright holders cannot use their rights to fix resale prices in the downstream market. *Bobbs-Merrill Co. v. Straus*, 210 U.S. 339, 350–51 (1908); *see also Kirtsaeng*, 133 S. Ct. at 1366 (noting the "absurd result" that would exist if a copyright owner could exercise downstream control after authorizing a first sale).

## B. Attorney's Fees

"[A]n award of attorney's fees to a prevailing defendant that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of district courts. Moreover, [s]uch discretion is not cabined by a requirement of culpability on the part of the losing party." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228–29 (9th Cir. 1997) (internal quotation marks and citations omitted).

District courts have great latitude to exercise "equitable discretion" in the attorney's fees context. *Id.* "Some of the factors that can affect a district court's decision are (1) the

degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Id.*

Here, the district court did not abuse its discretion in awarding attorney's fees to Costco.  The district court identified these factors and found each weighed in Costco's favor.  The court further concluded that "[b]y affixing a barely perceptible copyrighted design to the back of some of its watches, Omega did not provide—and did not seek to provide—creative works to the general public."  Instead, "Omega sought to exert control over its watches, control which it believed it could not otherwise exert."  Thus, the court concluded, it should have been clear to Omega that copyright law neither condoned nor protected its actions, and the imposition of fees would thus further the purpose of the Copyright Act.  This conclusion was not error.

**AFFIRMED.**

WARDLAW, Circuit Judge, concurring in the judgment:

The district court granted summary judgment and awarded attorney's fees to Costco based on the defense of copyright misuse.  The majority affirms the district court relying upon the *Kirtsaeng*-resurrected first sale doctrine; a doctrine we held inapplicable the first time around, and which

the parties did not brief or argue in this appeal.[1]  Indeed, as Costco's counsel confirmed at oral argument, "the first sale issue per se is not at issue in this appeal."  I concur in the judgment affirming the district court, but do so based on the district court's rationale for granting summary judgment—copyright misuse—and the arguments actually presented to us.

## I.

The majority opinion fails to do justice to the facts presented by this unique lawsuit.  Costco is one of America's largest retailers.  It is well known that Costco's discount warehouses sell everything from pallets of toilet paper to slices of pizza.  But only card-carrying members know that Costco also sells a wide range of luxury goods, including Dom Pérignon Champagne, Waterford crystal, Dolce & Gabbana handbags, and, until this lawsuit was filed, Omega watches.

Omega sued Costco for copyright infringement because Costco sold, without Omega's permission, forty-three genuine Omega watches in the United States.  Each watch Costco sold was engraved with a copyrighted Omega design (the "Globe Design"), which Costco did not have permission to use.  The district court concluded, however, that because Omega placed the Globe Design on its watches at least in part to control the importation and sale of Omega watches in the United States, Omega had misused its copyright.  In District Court Judge Terry Hatter's words, Omega impermissibly

---

[1]  The majority should have asked for supplemental briefing when *Kirtsaeng* was decided in March 2013 so that the parties could address its applicability and the implications of the law of the case doctrine.

"used the defensive shield of copyright as an offensive sword."

## A.

Omega is a Swiss luxury watchmaker which distributes and sells its watches around the world through authorized distributors and retailers. It is also a wholly-owned subsidiary of the Swiss corporation the Swatch Group, Ltd. The Swatch Group (U.S.), Inc. ("Swatch U.S.A.") is Omega's authorized and exclusive distributor in the United States. Costco, a U.S. corporation, operates membership warehouse clubs which sell merchandise, including brand-name watches, to their members at lower prices than are available through many other retailers.

Sometime before March 2003, Swatch U.S.A. learned that Costco was selling genuine Omega watches in the United States without Omega's authorization. Costco had circumvented Omega's distribution model and procured the Omega watches through the "gray market." Gray market goods, or parallel imports, are genuine brand-name products typically manufactured abroad, purchased, and imported into the United States by third parties. Retailers are able to sell these products at a discount through arbitrage, *e.g.*, if Omega's watches retail for less in Morocco than in the United States, and Costco procures the watches at the Moroccan price and then imports them into the United States, Costco can undercut the authorized U.S. retailers.[2] Costco was only

---

[2] Here, Omega first sold its watches to authorized distributors overseas, who then sold them to unidentified third parties. *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 984 (9th Cir. 2008), *abrogated by Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013). These

the latest in a series of unauthorized retailers selling Omega watches in the United States.  Because Costco and the other "unauthorized" retailers were selling Omega watches at far lower prices than Omega's suggested retail price, Swatch U.S.A. began to receive complaints from authorized Omega retailers.[3]  Swatch U.S.A.'s then-president was faced with a mounting distribution problem.  To increase Swatch U.S.A.'s control over Omega watches in the United States, Swatch U.S.A.'s president took action "to stem the tide of the gray market."

Swatch U.S.A.'s legal department devised a strategy to use copyright protection to strengthen Omega's control over the importation of Omega watches into the United States.  On March 12, 2003, Omega registered its "Globe Design" for U.S. copyright protection, and then began engraving a miniscule Globe Design on the underside of the best-selling Seamaster watch.  *See* Appendix A.  Although the Omega Seamaster was the first product line engraved with the Globe Design, Omega's plan was to eventually place copyrighted engravings on many of Swatch U.S.A.'s product lines and use

---

unidentified third parties sold the watches to ENE Limited, a New York company, which in turn sold them to Costco.  Costco then sold the watches to consumers in the United States.  *Id.*

[3]  When this lawsuit was filed in 2004, Omega's suggested retail price for the Omega "Seamaster," one of the brand's best-selling watches and the watch that is at the center of this copyright dispute, was $1,995. Costco sold the watch for the price of $1,299.

12    OMEGA S.A. V. COSTCO WHOLESALE CORP.

the design's copyright protection to prevent unauthorized retailers from selling Omega's watches.[4]

In 2004, Costco purchased 117 Omega Seamaster watches, each engraved with the Globe Design, from ENE Limited for the purpose of resale. Before this lawsuit was filed, Costco had sold forty-three of those watches to its members. Omega sued Costco in July 2004, alleging that Costco's sale of the forty-three Seamaster watches engraved with the Globe Design infringed Omega's copyright in the design in violation of 17 U.S.C. §§ 106 and 602. In 2007, the district court concluded that the first sale doctrine was a complete defense to Omega's claims, and granted Costco's motion for summary judgment. We reversed that judgment in 2008, holding that the first sale doctrine did not apply to foreign-made goods first sold abroad and then imported into the United States without the copyright owner's permission. *See Omega S.A. v. Costco Wholesale Corp.* ("*Omega I*"), 541 F.3d 982, 983 (9th Cir. 2008). An equally divided Supreme Court affirmed that decision. *Costco Wholesale Corp. v. Omega, S.A.*, 131 S. Ct. 565 (2010) (per curiam).

On remand, the parties again cross-moved for summary judgment. This time, the district court granted Costco's motion for summary judgment, based on the equitable defense of copyright misuse. The district court found that the

---

[4] Although Omega had been engraving artistic designs, such as its "Seahorse," on the underside of its watches for decades as "a mark of prestige and luxury and identification," the Globe Design was markedly different. By contrast to the "Seahorse," which was prominently displayed on the watch's underside, the Globe Design measured only one-eighth of an inch in diameter—roughly the size of the hole in a Cheerio. *See* Appendix A. Also, unlike it had with the "Seahorse," Omega neither advertised nor promoted the Globe Design.

purpose of Omega's lawsuit was to "stem the tide of the grey market" and the "unauthorized importation of Omega watches into the U.S." Omega had conceded that it had affixed the copyrighted Globe Design to the underside of its watches to take advantage of section 602 of the Copyright Act, which makes the importation of copyrighted goods into the United States without the copyright owner's authorization a violation of the owner's exclusive right to distribute. The district court concluded that Omega misused its copyright in the Globe Design by leveraging its limited monopoly over the design to control the importation and sale of Seamaster watches.

## II.

### A.

The constitutional policy underlying copyright protection is to "promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8. "The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). "'The sole interest of the United States and the primary object in conferring the monopoly,' [the Supreme] Court has said, 'lie in the general benefits derived by the public from the labors of authors.'" *Id.* (quoting *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)). To motivate the creative activity of authors and inventors for the sake of the public's benefit, copyrights are limited in time and scope. *Sony Corp. of Am. v. University City Studios, Inc.*, 464 U.S. 417, 429 (1984). "Implicit in this rationale is the assumption that in the absence of such public benefit, the grant of a

copyright monopoly to individuals would be unjustified." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.03[A] (2014) (footnote omitted). "The copyright law, like the patent statutes, makes reward to the owner a secondary consideration." *United States v. Paramount Pictures*, 334 U.S. 131, 158 (1948).

Copyright protection exists "in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Copyright laws protect an author's expression of an idea, but not the idea itself. *Id.* at § 102(b). "'[U]seful articles' that have an 'intrinsic utilitarian function' apart from their expression or appearance" are not copyrightable. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 916 n.12 (9th Cir. 2010) (citing 17 U.S.C. §§ 101, 102(a)(5)). "[I]f an article has *any* intrinsic utilitarian function, it can be denied copyright protection except to the extent that its artistic features can be identified separately and are capable of existing independently as a work of art." *Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 893 (9th Cir. 1983) (emphasis in original).

Because Omega's watches are useful articles, they are not copyrightable, with some possible exceptions not before us. *See Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*, 155 F. Supp. 932, 934–35 (S.D.N.Y. 1957), *aff'd on other grounds*, 260 F.2d 637 (2d Cir. 1958) (holding that a bejeweled wrist watch is not a work of art subject to copyright protection); *but see Severin Montres Ltd. v. Yidah Watch Co.*, 997 F. Supp. 1252, 1265 (C.D. Cal. 1997) (holding that a Gucci watch with a unique bracelet and clasp arrangement, and a frame around the watch's face that forms the letter "G," was designed with an artistic purpose

OMEGA S.A. v. COSTCO WHOLESALE CORP.      15

and is copyrightable).[5]   Because the watches are not the proper subject of copyright protection, Omega does not argue that Costco infringed copyrights protecting its watches, the argument upon which the majority rests its opinion.  Instead, it argues that Costco infringed its limited monopoly over the copyrighted Globe Design, which was engraved on the watches that Costco sold.

Inherent in granting a copyright owner the exclusive right to reproduce his works is the risk that he will abuse the limited monopoly his copyright provides by restricting competition in a market that is beyond the scope of his copyright.  An owner's attempt to impermissibly expand his lawful protection from competition contravenes not only the policy of the copyright laws, but also the central purpose of the antitrust laws.  *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1010 (9th Cir. 2003) ("The central

---

[5]  The majority concludes, erroneously, that the watches are properly the subject of copyright protection.  The first sale doctrine, as discussed in Justice Breyer's opinion for the Court in *Kirtsaeng*, applies *only* where the distributed copy is of an item that is a proper subject of copyright protection.  As Justice Breyer describes the question before the Court in *Kirtsaeng*,

> we ask whether the "first sale" doctrine applies to protect a buyer or other lawful owner of a copy (of a copyrighted work) lawfully manufactured abroad. Can that buyer bring that copy into the United States (and sell it or give it away) without obtaining permission to do so from the copyright owner?  *Kirtsaeng*, 133 S. Ct. at 1355.

The Court answers the question by "hold[ing] that the 'first sale' doctrine applies to copies of a *copyrighted* work lawfully made abroad." *Id.* at 1355–56 (emphasis added).

purpose of the antitrust laws, state and federal, is to preserve competition.") (internal quotation marks and alterations omitted). "Copyright misuse is a judicially crafted affirmative defense to copyright infringement" designed to combat the impermissible extension of a copyright's limited monopoly. *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011). Its purpose is to prevent "holders of copyrights from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Id.* (internal quotation marks omitted).

The defense of copyright misuse, however, is not limited to discouraging anti-competitive behavior. Indeed, "[t]he question is not whether the copyright is being used in a manner violative of antitrust law, . . . but whether the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990). We expressly adopted copyright misuse as an equitable defense to a claim of infringement in *Practice Management Information Corp. v. American Medical Ass'n*, 121 F.3d 516 (9th Cir. 1997), noting that "copyright misuse does not invalidate a copyright, but precludes its enforcement during the period of misuse," *id.* at 520 n.9, *as amended by* 133 F.3d 1140 (9th Cir. 1998); *see also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) (recognizing the Fifth Circuit's discussion of copyright misuse "as an unclean hands defense which forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant") (internal quotation marks and alterations omitted).

The copyright misuse doctrine "forbids the use of the copyright to secure an exclusive right or limited monopoly

not granted by the Copyright Office." *Lasercomb*, 911 F.2d at 977 (alterations omitted). The defense is often applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws. *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1315 (2013). We have discussed copyright misuse in only a handful of published opinions. But while we have "applied the doctrine sparingly," *Apple Inc.*, 658 F.3d at 1157, copyright misuse is a valid defense, "the contours of which are still being defined," *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 941 (9th Cir. 2010).

While we have often discussed copyright misuse in the context of anti-competitive behavior that restrains the development of competing products, "a defendant in a copyright infringement suit need not prove an antitrust violation to prevail on a copyright misuse defense." *Practice Mgmt. Info. Corp.*, 121 F.3d at 521; *see also, e.g.*, *Apple Inc.*, 658 F.3d at 1157–58; *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995), *superseded in part by statute on other grounds*, 17 U.S.C. § 117(c), *as recognized in Apple Inc.*, 658 F.3d at 1158. As the Seventh Circuit interprets the defense:

> The argument for applying copyright misuse beyond the bounds of antitrust, besides the fact that confined to antitrust the doctrine would be redundant, is that for a copyright owner to use an infringement suit to obtain property protection, here in data, that copyright law clearly does not confer, hoping

18    OMEGA S.A. V. COSTCO WHOLESALE CORP.

> to force a settlement or even achieve an
> outright victory over an opponent that may
> lack the resources or the legal sophistication
> to resist effectively, is an abuse of process.

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d
640, 647 (7th Cir. 2003). Thus, to "cloak [itself] in copyright
misuse's protective armament" here, Costco is not required
to demonstrate that Omega's use of its copyrighted Globe
Design violates antitrust law. *Soc'y of Holy Transfiguration
Monastery*, 689 F.3d at 65. This appeal presents the novel
issue whether Omega's attempted use of its Globe Design
copyright to control imports and restrict competition from
unauthorized retailers of its watches, which are "neither
copyrightable nor copyrighted," *Assessment Techs.*, 350 F.3d
at 641, constitutes copyright misuse.

B.

The district court correctly held that Omega misused its
copyright "by leveraging its limited monopoly in being able
to control the importation of [the Globe Design] to control the
importation of its Seamaster watches." The district court did
not clearly err in finding that: (1) Omega copyrighted the
Globe Design, at the advice of its legal department, to control
the importation and distribution of Omega watches into the
United States; and (2) Omega told its authorized distributors
that the purpose of suing Costco was to "stem the tide of the
grey market" and the "unauthorized importation of Omega
watches into the U.S." In other words, Omega attempted to
use the copyrighted Globe Design to decrease competition in
the U.S. importation and distribution of its watches by it and
its authorized dealers—an obvious leveraging of a copyright
to control an area outside its limited monopoly on the design.

Omega argues that its anti-competitive motives are irrelevant to the issue of copyright misuse. According to Omega, our inquiry should instead focus on the copyright holder's objective conduct or use. But Omega's semantic hairsplitting is unpersuasive. By definition, "use" includes an inquiry into purpose. *See Black's Law Dictionary* 1681 (9th ed. 2009) (defining "use" as "The application or employment of something; esp., a long-continued possession and employment of a thing *for a purpose* for which it is adapted") (emphasis added); *see also Use, Oxford English Dictionary*, http://www.oed.com/view/Entry/220635?rskey=0ebBGE&result=1#eid (last visited June 29, 2014) ("The act of putting something to work, or employing or applying a thing, for any (esp. a beneficial or productive) *purpose*." (emphasis added)). However, we need not decide whether Omega's motives are sufficient to establish copyright misuse. The undisputed record shows that before this lawsuit consumers were able to a buy a genuine Omega Seamaster watch from Costco for 35% less than Omega's suggested retail price. This is no longer the case. Thus, at least one consequence of Omega's lawsuit has been a reduction of intrabrand price competition for uncopyrightable Omega watches in the United States.

Lastly, because copyright misuse is an equitable defense to an infringement action, the core of our inquiry is whether "[e]quity may rightly withhold its assistance from such a use of the [copyright] by declining to entertain a suit for infringement . . . until . . . the improper practice has been abandoned and [the] consequences of the misuse of the [copyright] have been dissipated." *Morton Salt Co. v. Suppiger Co.*, 314 U.S. 488, 493 (1942), *abrogated on other grounds by Ill. Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S.

28 (2006).[6]  If Omega was using its copyright in a manner contrary to public policy, we, as a court of equity, may refuse to aid such misuse.  *See Lasercomb*, 911 F.2d at 975–76.

Equity supports the district court's refusal to enforce Omega's copyright in its Globe Design against Costco during the period of Omega's misuse.   Omega wielded its copyrighted Globe Design to restrict unauthorized retailers from selling genuine Omega watches procured from the gray market.  Indeed, in his deposition, Swatch U.S.A.'s president agreed that the "whole purpose" of creating the Globe Design in the first place was to prevent unauthorized retailers from selling Omega watches.  Because unauthorized retailers, such as Costco, were selling gray market Omega watches in the United States below Omega's suggested retail price, Omega attempted to maintain the price of its watches sold in the United States by inconspicuously engraving the copyrighted Globe Design on the underside of its Seamaster watches. Even drawing all reasonable inferences in Omega's favor, there is no genuine dispute as to whether Omega sued Costco for copyright infringement at least in part to control the unauthorized importation and sale of Omega watches.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Thus, the district court did not err in granting Costco's motion for summary judgment on the copyright misuse defense.

Relying on *Mazer v. Stein*, 347 U.S. 201 (1954), Omega maintains that as the holder of the copyright to its Globe Design it has the right to sue Costco for infringing its

---

[6] Although *Morton Salt* is the origin of the patent misuse defense, we have acknowledged that the defense of copyright misuse relies on an extension of the rationale supporting patent misuse.  *See Apple Inc.*, 658 F.3d at 1157.

exclusive right to distribute copies of its Globe Design. *See* 17 U.S.C. §§ 106(3); 602(a)(1). In *Mazer*, a lamp manufacturer registered for copyright protection a statuette of dancing figures that was intended primarily to be used as lamp bases. 347 U.S. at 202–03. A competing lamp manufacturer copied the statuette design and began to manufacture and sell lamps that used the statuettes as a base, all without the copyright owner's permission. *Id.* The copyright owner sued the competitor for copyright infringement. The Supreme Court granted certiorari to answer a single question: "Can statuettes be protected in the United States by copyright when the copyright applicant intended primarily to use the statuettes in the form of lamp bases to be made and sold in quantity and carried the intentions into effect?" *Id.* at 204–05. Or, as the Court put it in plain terms, "Can a lamp manufacturer copyright his lamp bases?" *Id.* at 205. The Supreme Court upheld the validity of the copyright protecting the statuettes and concluded that "the intended use or use in industry of an article eligible for copyright" does not invalidate the copyright. *Id.* at 218. Omega contends that just as the copyright owner in *Mazer* was permitted to restrict the distribution of lamps (useful articles) that incorporated his copyrighted work (the statuettes), so too should Omega be able to restrict the distribution of watches that incorporated its copyrighted work (the Globe Design).

Contrary to Omega's assertion, *Mazer* does not empower Omega to transform its Globe Design copyright into a watch copyright, thereby contravening the general rule against granting copyright protection over useful articles. *See* Nimmer § 2.08[B][3], at 2-95. First, *Mazer* did not concern copyright misuse. The copyright infringers in *Mazer* were challenging the underlying *validity* of the owner's copyright;

they were not challenging how the owner was *using* the copyright. *Id.* at 202 ("This case involves the validity of copyrights."). As Omega itself repeatedly emphasizes, the validity of Omega's copyright in the design is not in dispute. Second, the *Mazer* Court did not consider the infringer's challenge to the copyright to be related to questions of unfair competition—of which the copyright misuse defense is deeply concerned. 347 U.S. at 206 ("No unfair competition question is presented."). Instead, the Court focused on whether copyrighted works could be incorporated into utilitarian products and remain copyrightable. *Id.* at 208. Third, a copyrighted statuette that serves as the base for a lamp bears a markedly different relationship to the useful product than a nearly invisible copyrighted design that is discreetly placed on the underside of a watch. Both a lamp and a watch serve utilitarian purposes—to produce light and tell time—but the copyrighted works incorporated into each article affect the character and consumers' perceptions of each article differently. The statuettes in *Mazer* served as lamp bases, and may have been one of the central distinguishing characteristics to a consumer between the copyright owner's lamps and its competitor's lamps. In contrast, the Globe Design is not a distinguishing characteristic that prospective watch buyers consider when deciding whether to purchase an Omega watch. In fact, when this suit was filed, Omega had not publicized the Globe Design and was not using it to influence consumers' purchasing decisions. Unlike other designs that Omega had engraved on its watches, the Globe Design was not "a mark of prestige and luxury and identification." Put more plainly, the *Mazer* Court's discussion of copyright concepts such as originality and separability are not implicated here.

Omega's emphasis on other cases involving similar facts—such as *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 485 (9th Cir. 1994) (holding that a perfume distributor could sue a retailer for copyright infringement when the retailer sold the perfume in original copyrighted packaging), and *Quality King Distributors, Inc. v. L'Anza Research International, Inc.*, 523 U.S. 135, 153–54 (1998) (holding that the first sale doctrine is applicable to imported copies where a distributor sold imported bottled hair products affixed with a copyrighted label design)—is misdirected because those cases involved different public policy concerns than those animating the copyright misuse defense. In neither *Parfums Givenchy* nor *Quality King* was the defense of copyright misuse at issue. Furthermore, *Parfums Givenchy* was decided before we adopted the copyright misuse defense in *Practice Management Information Corp.*, 121 F.3d at 520.

The context of Omega's actions is crucial to this conclusion. Omega concedes that it designed and secured copyright protection for the Globe Design for the purpose of using copyright law to restrict the unauthorized sale of Omega watches in the United States. Costco was one such unauthorized retailer that threatened Omega's distributor relationships because it sold genuine Omega watches at prices lower than authorized Omega dealers were willing or able to offer. Costco was able to sell Omega watches at a discount because it had procured the watches from the gray market, which took advantage of international differences in Omega's pricing structures.

Omega's right to control distribution of its copyrighted work is not limitless. "The Supreme Court has made clear that the property right granted by copyright law cannot be used with impunity to extend power in the marketplace

beyond what Congress intended." *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1328 (Fed. Cir. 2000) (citing *United States v. Loew's, Inc.*, 371 U.S. 38, 47–48 (1962)). Copyright misuse "bars a culpable plaintiff from prevailing on an action for the infringement of the misused copyright." *Lasercomb*, 911 F.2d at 972. The Copyright Office granted Omega the exclusive right to control the importation and distribution of the Globe Design into the United States. It did *not* empower Omega to restrict competition from unauthorized retailers selling genuine, gray market Seamaster watches in the United States. Although the Globe Design engraved on the underside of the Seamaster watches was copyrighted, Omega misused its copyright when it used its intellectual property protection to obtain a copyright-like monopoly over uncopyrightable Seamaster watches. *Cf. DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996) (holding, at the preliminary injunction stage, that a defendant might prevail on the defense of copyright misuse because the copyright owner sought to enjoin a competitor from downloading the owner's copyrighted operating system for the purpose of developing a competing microprocessor card, thereby restricting the development of competing microprocessor cards). Omega's expansion of its copyright-like monopoly eliminated competition from unauthorized watch retailers like Costco, thereby allowing Omega to control—through its exclusive distributor, Swatch U.S.A.—the retail pricing of Seamaster watches sold in the United States. If the copyright law allowed Omega to use its copyright to combat the importation and sale of all gray market watches that are stamped with the Globe Design, it would effectively grant Omega a copyright-like monopoly over the distribution and sale of Omega watches in the United States. Because such an outcome directly controverts the aims of copyright law, it is impermissible.

Citing to *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330 (9th Cir. 1995), and *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011), among other cases, Omega contends that it did not impermissibly leverage its limited monopoly in the Globe Design to control an area outside of that monopoly. The parties in *Triad* and *Apple Inc.*, however, were involved in a different type of competition than Omega and Costco are involved in here. In *Triad*, the copyright owner (Triad) manufactured computers for use by automotive parts stores and designed, sold, and licensed its own copyrighted software to run its computers. 64 F.3d at 1333. Triad sued an independent service organization ("ISO") that serviced Triad computers for copyright infringement, alleging that the ISO made unauthorized copies of Triad's software when it serviced Triad computers. *Id.* Triad and the ISO were "compet[ing] for the business of servicing and maintaining Triad computers." *Id.* at 1333. We affirmed the district court's grant of Triad's motion for a preliminary injunction, *id.* at 1340, and rejected the ISO's copyright misuse defense because "Triad did not attempt to prohibit Southeastern or any other ISO from developing its own service software to compete with Triad," *id.* at 1337.

Similarly, in *Apple Inc.* we held that Apple's software license agreement ("SLA") did not misuse Apple's copyrights because the SLA did "not restrict competitors' ability to develop their own software, nor [did] it preclude customers from using non-Apple components with Apple computers." 658 F.3d at 1160. The disputed provision of the SLA required the exclusive use of Apple's software on Apple computers. *Id.* at 1153. Psystar was a competing computer manufacturer that sold its "Open Computers" with a copy of Apple's copyrighted software pre-installed. *Id.* We affirmed

the district court's entry of a permanent injunction against Psystar's infringement of Apple's copyrighted software. *Id.* at 1162. In rejecting Psystar's copyright misuse defense, we distinguished the facts in *Apple Inc.* from the facts underlying the Fifth Circuit's finding of copyright misuse in *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772 (5th Cir. 1999).[7] In *Alcatel*, a copyright owner used its copyrighted operating system's licensing agreements to stifle the development of competing microprocessor cards. 166 F.3d at 793–94. We held in *Apple Inc.*, however, that Apple's SLA did not hinder competition; it "merely restrict[ed] the use of Apple's own software to its own hardware." 658 F.3d at 1160.

Omega and Costco are not engaged in the same type of product competition that existed in *Triad* and *Apple Inc.* Omega is primarily a watch manufacturer that sells directly to distributors. The distributors, such as Swatch U.S.A., then sell the watches to the authorized retailers in their designated territories. Omega's distribution model is designed to carve up geographical territories and grant each regional distributor the exclusive right to sell Omega watches to an authorized network of retailers in its own territory. Costco circumvented Omega's designated distribution channel in the United States by accessing watches from the gray market. By doing so, Costco began competing with Omega's authorized retailers. The retail competition between Omega's authorized retailers

---

[7] Alcatel USA, Inc. was formerly named DSC Communications Corporation. In *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597 (5th Cir. 1996), this dispute between two competitors in the telecommunications equipment manufacturing industry was at the preliminary injunction stage. *Alcatel* was decided a few years later, after a trial addressing the multitude of federal and state law claims, including copyright infringement.

and Costco is what Omega sought to suppress. Unlike in *Apple Inc.* and *Psystar*, but as in *Alcatel*, Omega's assertion that its actions do not preclude Costco from selling other lines of watches or developing its own line of watches "is simply irrelevant." *Alcatel*, 166 F.3d at 794.

Superficially, Omega's conduct may appear similar to Apple's conduct in *Apple Inc. v. Psystar*. As Omega argues, Omega is merely restricting the sale, or use, of its watches to dealers that it approves, just as Apple was allowed to restrict the use of its copyrighted software to its own hardware. The analogy breaks down, however, because, unlike Apple's ownership of a copyright in its software, Omega does not own a copyright in its *watches*. Omega merely owns the copyright in its Globe Design, which it engraved onto its non-copyrightable watches to limit retail competition. It would be as if Apple surreptitiously placed a few lines of programming code from its copyrighted software onto a piece of computer hardware that was not entitled to intellectual property protection, with the express purpose of using its copyright to restrict competing retailers from selling that hardware at discounted prices. Even when drawing all reasonable inferences in Omega's favor, there is no genuine dispute concerning whether restricting retail competition was one of the reasons Omega sued Costco for copyright infringement.

Omega had other available remedies. It could have terminated its distribution agreements with the distributors that sold Omega watches outside of their designated territories. Or, if Omega believed that Costco, or intermediaries like ENE Limited, were inducing distributors to breach their contracts, Omega may have been able to sue them for tortious interference. Instead, Omega improvidently decided to sue Costco for copyright infringement. By doing

so, Omega misused the Congressionally limited power of copyright protection to address a problem better left for other avenues of relief.

## III.

"The limited scope of the copyright holder's statutory monopoly, like the limited copyright duration required by the Constitution, reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts." *Twentieth Century Music Corp.*, 422 U.S. at 156 (footnote omitted). Omega's attempt to expand the scope of its statutory monopoly by misusing its copyright in the Globe Design upset this balance. The watchmaker's anticompetitive acts promoted neither the broad public availability of the arts nor the public welfare. Instead, they eliminated price competition in the retail market for Omega watches and deprived consumers of the opportunity to purchase discounted gray market Omega watches from Costco. Omega misused its copyright by engraving the Globe Design on the underside of its watches, and attempting to use copyright law to eliminate intrabrand competition from Costco in the retail watch market. Because the district court correctly held that Omega misused its copyright in the Globe Design by attempting to leverage its limited monopoly over the design to control the importation and sale of Seamaster watches, I would affirm the district court on the issue of copyright misuse.

**APPENDIX A**

